## Grugan et al. v. Philadelphia, Appellant.

*Land damages—Opening of streets—Statute of limitations—Constitution, art. 3, § 21—Act of June 13, 1836, § 21.*

The statute of limitations begins to run against the right of a landowner to recover damages for injuries resulting from the opening of a street through his land, from the time of the actual opening of the street, and not from the date of the filing of a jury's report in favor of opening the street.

Although the limitation of one year, prescribed in § 7 of the act of June 13, 1836, P. L. 556, was abrogated by art. 3, § 21, of the constitution of 1874, the constitutional provision does not change the time from which the limitation runs; it merely enlarges the period within which the application for viewers to assess damages may be made.

*Land damages—Streets—Evidence—Declarations.*

A false statement, made by an auctioneer at a sale of city lots, to the effect that a street had been opened through the land and damages paid, does not affect the liability of the city for damages caused by the subsequent opening of the street, and evidence of such statements is not admissible in proceedings to recover the damages.

*Land damages—Evidence—Premature opening of streets.*

In a proceeding in the court of common pleas to assess damages for

opening a street it is improper for the court to charge that the question for the jury is " whether the opening of the street, so far as its effect upon the value of property is concerned, was premature or not." In such case it is not within the province of the jury to review the proceedings in the court of quarter sessions, or the action of the city, with reference to the time of opening the street.

*Land damages—Subsequent opening of other streets.*

In proceedings to recover damages resulting from the opening of a street, the damages to which the plaintiff is entitled are to be determined by considering the effect upon the property of the opened street, and the jury has no right to consider the inconvenience and damage which may arise from the subsequent opening of another street: Negley Avenue, 146 Pa. 456.

*Damages for removal of house from bed of street.*

The jury has no right to allow, as a distinct item of claim, the cost of removing a house from the bed of the street; the damages must be measured by the change produced in the market value of the property : Chambers v. Borough of South Chester, 140 Pa. 510.

*Assignments of error—Charge—Act of March* 24, 1877. ·

Under the act of March 24, 1877, § 2, P. L. 38, error may be assigned in respect to any part of the charge of the court which has been filed, with or without request, and whether excepted to in the court below or not: Janney v. Howard, 150 Pa. 339.

Argued March 23, 1893. Appeal, No. 224, Jan. T., 1893, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec., T., 1892, No. 1001, on verdict for plaintiffs, James Grugan, James Grugan trustee, under will of John Grugan, deceased, and William H. Hinkle, appellees. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from assessment of land damages. Before REED, J.

At the trial, the court, under objection and exception, refused to admit in evidence the record of a road jury appointed in 1877, by the court of quarter sessions of February term, 1877, to determine the necessity of opening Twenty-eighth street from Park street to Reed street, and which jury, on September 29, 1877, reported in favor of opening said Twenty-eighth street, between the points named. [1]

The court, under objection and exception, refused to admit the catalogue of the public sale at which plaintiff purchased the property. The catalogue contained this statement: " Twenty eighth street opened and damages paid." [2]

When Abner G. Murphy, a witness for defendant, was on the stand, he was asked : " Q. The property was sold as Twenty-eighth street being opened?" Objected to. Objection sustained and exception. [3]

The court charged in part as follows :

" [The question in this case, put in a few words, is, whether the opening of this street, so far as its effect upon the value of property is concerned, was premature or not, and that is the problem which it is your duty to settle.] [4]   There are men in this city whose whole lives have been devoted to ascertaining that fact, and they often make great mistakes.   It is not an easy thing to say when it is a wise and proper step to open a street through property.   A man of the best judgment and most knowledge may make mistakes as well as any one else ; and [you are called upon here to say whether, in this particular case the opening of this particular street was so far ahead of the need of the property in that locality that, taking away the soil from an adjoining owner worked a greater injury to him than by having a communication with the rest of this city by means of this street.] [5] . . . .

" In the first place we have the fact that so much of this land was taken.   [You can see from the plan that this property is irregular in its outlines, and this street has cut it up, leaving a certain triangular piece or pieces of irregular shape on each side of Twenty-eighth street and on each side of Reed street.] [6] . . . .

" Now the question here chiefly for your consideration is whether the time at which this street was opened—whether it was opened at such a time and in such a manner as to so enhance the value of plaintiff's property that they gained as much or more by the opening of this street than they lost in amount of property taken.   To a certain extent, of course, in all cases the burden of proof is on the plaintiff.   The plaintiff does at least this much: He starts his case by saying that he had the land before the street was opened, and after the street was opened the land was gone ; and the city says: 'It is true your land is taken, and it is our duty to pay you whatever damage you have suffered ; but we can show you that your property is worth more than it was before the land was taken,' and the whole case comes finally to this one question, what was the effect on this property of the opening of the street ? " . . . . .

After reviewing the testimony the court continued:

" The defendant contends that the locality was ripe for improvement, and in support of that theory has produced witnesses who have testified that a certain number of streets have been built up with houses ; a row of houses on the west side of Twenty-eighth street, reaching almost to Reed street, or close to the northern boundary of the plaintiff's property.   It does not, of course, follow because the neighborhood generally would be benefited by the street that Mr. Grugan's property was benefited in the same proportion, or, if it was benefited in the same proportion, it does not follow that that proportion would be so great as to do that with the value of the property which was absolutely taken, because at the very time of the opening of this street and the subsequent building of houses there, if this property was in a ripe condition for improvement, then, of course, that would also add to the value of the other ground taken, and it may be argued that while the property in that neighborhood is valuable and ought to have streets—but if the neighborhood is valuable, then this particular piece of ground, it may be argued, would be more desirable, more valuable.   The answer to that is that the value is increased by the opening of the street.

" You went down in that neighborhood yesterday and you saw the way it looked, the condition it was in, the intermediate condition between brick fields and truck farms, and not closely built up.   It is in that position to-day.   It takes some nice judgment to decide just how far any given steps in the way of improvement will act as an improvement or, for the time being, as a loss.   [If this street took away from the plaintiff a certain amount of property of value and the benefit is not present, but in the future, then, of course, it is a loss to him.] [7]   On the other hand, the witnesses for the city say that not only is that ground of value at present, but that the value of the ground is comparatively slight compared with the question of benefit to it from the opening of this street.   I do not see any way out of this matter and will have to leave it to your best judgment.   You will, of course, ascertain the value of this property before the opening of the street, and after the opening of the street.   The price at which it would sell is one test by which to ascertain the value.   You have heard witnesses on both sides and you must decide the question.   It is difficult to reconcile the state-

ments of the witnesses for the two parties, for men of capacity and integrity differ in their view on that question. [In opening the street the city compelled the plaintiff to go to a certain expense in moving buildings. Of course, that is one element of damage in addition to the value of the land."] [8]

Verdict and judgment for plaintiff for $1,403.38. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence; (4–8) instructions, quoting instructions, and offers of evidence, but not bills of exceptions; (9) entry of judgment for plaintiffs.

*James Alcorn, George E. Fili* and *Charles F. Warwick* with him, for appellant.—The record of the quarter sessions should have been admitted in evidence to show: (1) That the question of necessity for the opening of the street had been determined. (2) That any claim for damages was barred at the expiration of six years from November, 1877; City v. Wright, 100 Pa. 235; Grape Street, 103 Pa. 121.

The appellees may contend that in Volkmar Street, 124 Pa. 320, this court decided that the statute began to run only upon the physical opening of the street, or actual taking of the property. The case, however, does not apply, as the decision there was based entirely upon the local act of March 6, 1820, referring to the then district of Kensington.

In Twenty-Eighth Street, 102 Pa. 140, the court decided that the act of April 21, 1855, did not take away the jurisdiction of the court of quarter sessions, by the aid of a jury of view, to open streets laid down on a city plan.

The object of an advertisement for a public sale of land is to give notice of the fact that a sale is intended. The conditions of sale are superadded as a distinct matter by the auctioneer, published by parol or writing, and will control the advertisement: Ashcom v. Smith, 2 P. & W. 211.

It is by the advertisement and conditions of sale that the responsibilities of the vendor and vendee are to be determined: Miles v. Diven, 6 Watts, 148.

The courts, in recent years, have more and more closely held to the rule that witnesses must express their estimates of the money value of the injury, by contrasting the market

values of the property before and after: Chambers v. Borough South Chester, 140 Pa. 510; Ry. v. McCloskey, 110 Pa. 436; Baltimore etc. R. R. v. Springer, 21 W. N. 143; Pittsburgh etc. R. R. v. Patterson, 107 Pa. 461; Cummings v. Williamsport, 84 Pa. 472; R. R. v. Aunsman, 11 Atl. R. 561.

Damages are assessed for the opening, not for the laying out of streets; and the damages to which the plaintiff was entitled were to be determined by considering the effect upon the property of the opened street alone, and not in connection with the street yet unopened: Negley Avenue, 146 Pa. 456.

No damage can be awarded for improvements since the original ordinance laying out the street: Act of Dec. 27, 1871, P. L. 1300; Western Avenue, 7 Pa. C. C. R. 233; Pleasant St., 5 Luz. L. R. 221.

*Bradbury Bedell* for appellees.—No exception was taken to the charge, or any part thereof, and counsel on each side stated to the court that they were satisfied therewith, and had no exception to take thereto.

The catalogue was properly excluded: Ashcom v. Smith, 2 P. & W. 211; Jones v. Borough of Bangor, 144 Pa. 638.

There is no evidence of any kind that Twenty-eighth street was laid out on the plans of the city, or when those plans were confirmed.

This court has never decided in Chambers v. The Borough of South Chester, 140 Pa. 510, as stated by appellant, or in any other case, that the expense of removing buildings erected in the bed of a street before the street was plotted was not an element of damage. Prima facie the plaintiff in such a case is entitled to recover; it is for the defendant to show that for some reason or other he is barred.

Even if Twenty-eighth street had been opened by the proceedings in 1877, upon the plans of the city, the street was not opened to the public until 1889, when the ground was first taken, and under the decision of this court in Volkmar Street, 124 Pa. 320, plaintiffs had six years from the time of the actual taking of the ground within which to enter their suit.

OPINION BY MR. JUSTICE McCOLLUM, November 13, 1893:
The appellees are the owners of a tract of land containing

about five acres situate on and crossed by Reed, Twenty-eighth and Dickinson streets in the city of Philadelphia, and used, prior to 1889, as a brickyard. On the 21st of October, 1889, an ordinance authorizing the opening of Twenty-eighth street from Gray's Ferry road to Reed street was passed by councils and approved by the mayor. The ordinance provided that the director of the Department of Public Works should notify the owners of property over and through which the street would pass, that, at the expiration of three months from the time of the notice, the street would be required for public use, and it also authorized and directed the mayor to enter security on behalf of the city for the payment of any damages which might be assessed against it by reason of the opening of the street. In conformity with the provisions of this ordinance the city proceeded to open the street, and took about one sixth of an acre of the appellees' land for public use. The appellees then instituted proceedings for the assessment and recovery of the damages they sustained by reason of the appropriation of their land and the opening of the street, which proceedings, on the trial in the court below, resulted in a judgment in their favor for $1,403.38. From this judgment the city appealed and assigned as error certain rulings on offers of evidence and certain instructions to the jury.

The first specification complains of the rejection of the appellant's offer of " the report of a road jury, under date of September, 1877." It will readily be seen that the offer was incomplete and obscure. It was impossible to discover from its terms whether the report related to the opening of Twenty-eighth street or of some other street. Its purpose was not stated, nor did it contain enough to enable the court to determine intelligently whether it was relevant to the issue. But waiving the defects in the offer, and assuming that the report referred to was made by a jury of six appointed " to view and report upon the propriety and necessity of opening Twenty-eighth street from Park street to Reed street," was it material? It certainly was not, considered by itself. If it was relevant or material at all, it was only so in connection with the petition and the subsequent proceedings in relation to it. The specification of error alleges that a jury so appointed reported, on the 29th of September, 1877, in favor of opening " Twenty-eighth

street between the points named." The argument based on the report is that the property owner loses his right to compensation for an injury to his lot by the opening of the street, unless he commences proceedings for the ascertainment and recovery of it within six years from the time the report was made. Of course if this is so, the appellees have no claim which they can successfully assert, because they did not present a petition for viewers to assess their damages before June, 1890. But a jury's report in favor of opening a street is not the equivalent of an actual opening of it. The substitution of the former for the latter as the time from which the limitation runs is not warranted by reason or authority. The 7th section of the act of June 13, 1836, P. L. 556, provides that the owner of any land through which a public road shall be opened may, within one year from the opening of the same, petition the court of quarter sessions of the proper county for the appointment of six disinterested persons to view the premises and assess his damages. In considering the limitation on the right of action for road damages, and construing the statute which imposes it, this court said in Jarden v. Philadelphia, Wilmington and Baltimore Railroad Co., 3 Wharton, 509, that "if the owner of the land should present his petition to the court of quarter sessions, asking for viewers to assess the damages he may have sustained, he must set forth and show that the road has been opened ; it is not sufficient to show that it has been laid out. In many instances streets have been laid out several years before they are opened, and in the meanwhile are inclosed and occupied by the owner without any visible difference from his other property ; and the public is not bound to pay for them until they are actually opened for public use as a highway, and become thus appropriated to them as their property, and the exclusive right and occupation of the former owner is taken away. And for this reason the period of limitation prescribed, the year to which the owner is restricted for filing his petition for the assessment of damages, commences not from the laying out but from the opening of the road." In Lewistown Road, 8 Pa. 109, this court, following the principle laid down in Commonwealth v. McAllister, 2 Watts, 190, held that each property owner must present his petition, for viewers to assess damages, within one year from the time the street was opened through his lot ; that

the year, mentioned in the act of 1836, commenced as to him at the time his land was taken by the opening of the street through it, and not from the time when the whole street was finished and effectually opened for public use.   The same principle is applicable to a proceeding to recover damages caused by a change of grade: Ridge Avenue, 99 Pa. 469; City of Philadelphia v. Wright, 100 Pa. 235.   It has been decided since, that the limitation of one year, prescribed in section 7 of the act of 1836, was abrogated by article 3, section 21 of the constitution of 1874: Grape Street, 103 Pa. 121.   But the constitutional provision referred to does not change the time from which the limitation runs; it merely enlarges the period within which the application for viewers to assess damages may be made.

The second specification relates to the rejection of the appellant's offer of the catalogue of the public sale at which the appellees purchased their land.   The purpose of the offer was to show that in connection with the description of the land bought by them, the words " Twenty-eighth street opened and damages paid " appeared.   If these words are applicable to that portion of the street located on the appellees' lot, they constitute a manifestly false statement, because Twenty-eighth street was not opened at that point at the time of the sale, and no one pretends that damages were assessed and paid on account of the location, or of the report of viewers in favor of opening it.   It matters not whether this statement was printed in the catalogue or made verbally at the sale.   In either case it was a mere declaration by the auctioneers, and it did not affect the liability of the city for damages caused by the opening of the street, or prevent the lot owner from claiming them.

The third specification complains that the objections to a flagrantly leading question were sustained.   The objectionable question was in these words : " The property was sold as Twenty-eighth street being opened? "   This was more in the nature of an assertion than an inquiry, and it was put by the counsel for the city to the city's own witness.   It might have been properly rejected on the ground that it was violative of the rules which regulate the examination of witnesses on the trial of causes in a court of justice.   But, aside from the objections mentioned, it was an attempt to introduce, in another form, a

matter which we held, in passing upon the second specification, was immaterial and entitled to no influence in the decision of this case.

The remaining specifications refer to the instructions. The learned judge charged the jury as follows: "The question in this case, put in a few words, is, whether the opening of this street, so far as its effect upon the value of property is concerned, was premature or not, and that is the problem which it is your duty to settle." This instruction is the subject of complaint in the fourth specification of error, and considerable prominence was given to it by the substantial repetition of it in the portions of the charge on which the fifth and seventh specifications are based. We are unable to see what the jury had to do with the question thus submitted to them. It was their duty to ascertain from the evidence what damages, if any, the appellees sustained by the opening of Twenty-eighth street through their property, but they were not charged with the duty of determining whether the opening of it should have been postponed to a later period. In other words, it was not within their province to review the proceedings in the court of quarter sessions, or the action of the city, in reference to the time of opening. We think therefore that the instruction was erroneous, and we cannot say that it was harmless.

In ascertaining the damages sustained by the appellees by reason of the opening of Twenty-eighth street, the jury had no right to consider the inconvenience and damage which might arise from the subsequent opening of Reed street: Negley Avenue, 146 Pa. 456.

In cases of this kind if there is no depreciation in the market value of the land in consequence of the improvement, the landowner is not entitled to damages, because he has sustained none. Applying this principle to the present case we find that the true inquiry for the jury was, how did the opening of Twenty-eighth street through appellees' property affect the market value of it? Did the opening of the street add to or detract from that value? If it impaired the value of the property the amount of the depreciation caused by it was the measure of the damages. It was proper for the witnesses to explain how the property was injured and how it was benefited by the opening of the street, and it was proper for the jury to consider this

testimony as affecting market value.  But the jury had no right to allow, as a distinct item of claim, the cost of removing a house from the bed of the street: Chambers v. The Borough of South Chester, 140 Pa. 510.  If on a retrial it shall appear that Twenty-eighth street was laid out on the plans of the city after the confirmation of said plans, and that the appellees' house was erected on said street after it was so laid out, the house must be removed at their expense: Act of Dec. 27, 1871, P. L. 1300.

The objection that the charge cannot be reviewed here because it was not excepted to in the court below is answered by Janney v. Howard, 150 Pa. 339.

The fourth, fifth, sixth, seventh and eighth specifications are sustained and the other specifications are overruled.

Judgment reversed and venire facias de novo awarded.