# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA

---

## Gallagher, Appellant, v. Silver Brook Coal Co.

*Statute of limitations—Corporations—Suspension of business—Acts of March 27, 1713, 1 Penna. Laws 76, and April 25, 1850, P. L. 570—Constitutional law.*

The seventh section of the Act of April 25, 1850, P. L. 570, which enacts that "the provisions of the act passed the 27th of March, 1713, entitled 'An act for the limitations of actions' shall not hereafter extend to any suit against any corporation or body politic which may have suspended business," etc., is entirely overthrown by Section 21, of Article III, of the Constitution of 1874, which declares that "no act shall prescribe any limitation of the time within which suits may be brought against corporations for injuries to persons or property, or for other causes different from those fixed by general law regulating actions against natural persons, and such acts now existing are avoided;" and the Act of 1850 is not saved by the second section of the schedule of the Constitution which provides that "all laws enforced in this Commonwealth at the time of the adoption of this Constitution not inconsistent therewith, and all right, actions, prosecutions and contracts shall continue as if this Constitution had not been adopted."

*Statute of limitations—When the bar of the statute begins to run—Contract.*

In an action by practical coal miners against a corporation, to recover for services rendered in cutting coal in the defendant's mine, the court will say as a matter of law that the statute of limitations is a bar to the plaintiff's claim, where the evidence shows the plaintiff's contract was to cut the coal for a price named and

2 GALLAGHER, Appel., *v.* SILVER BROOK COAL CO.

to load it for an additional price per car, that the work was done in the fall of 1901, when it was stopped on account of the flooded condition of the property, that the plaintiffs were thereafter prevented from loading because no cars were furnished by the defendant, that the defendant suspended all work in 1906, that suit was not brought until the fall of 1908, and that plaintiffs had been paid bi-weekly for the coal which they had previously mined.

In such a case plaintiffs' right to demand payment arose within a reasonable time after the coal had been cut. Such reasonable time would be fixed by the time they customarily received pay for their labor in the mines. When the first pay day passed after any certain quantity of coal had been cut, and no payment received that should have been made on account of the coal cut, the plaintiffs' right to sue was complete.

Argued Dec. 9, 1914. Appeal, No. 202, Oct. T., 1914, by plaintiff, from order of C. P. Schuylkill Co., Sept. T., 1908, No. 222, refusing to take off nonsuit in case of George Gallagher and Thomas Shovelin v. Silver Brook Coal Company. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit to recover the contract price of cutting twenty-five hundred carloads of coal in defendant's mine in the autumn of 1901. Before KOCH, J.

At the trial the evidence showed that under plaintiffs' contract with defendant, a corporation, they were to receive fifty cents per car for cutting coal in defendant's mine, and thirty-eight cents additional for loading it into defendant's mine cars. They started work under the contract and were paid biweekly from time to time. The coal for which suit was brought was cut in 1901, but owing to the flooded condition of the mine, was not loaded into cars, and thereafter the defendant furnished no cars. All operations in the mine were suspended in 1906, and were not thereafter renewed. The defendant pleaded the statute of limitations. The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*J. O. Ulrich,* with him *G. F. Brumm,* for appellants.—
The statute begins to run against a party to a contract
when his right of action accrues, that is, when the con-
tract is broken by the other party but not before that
time : Overton v. Tracy, 14 S. & R. 311; Second Avenue,
7 Pa. Superior Ct. 55; Van Horn v. Scott, 28 Pa. 316;
Johnson v. Rutherford, 10 Pa. 455; Rankin v. Wood-
worth, 3 P. & W. 48; Patterson v. Colmer, 6 Atl. 753;
Barnes v. Ryan, 21 N. Y. Supp. 127.

In the case at bar no time was fixed for loading the
coal mined and the contract was not completed until it
was loaded when the plaintiffs would have been entitled
to eighty-eight cents per car; the defendant either com-
pleted the contract or refused to complete it when it
made it impossible to permit the plaintiffs to load the
coal which they mined and the statute began to run at
that time which was in December, 1907 : Cook v. Car-
penter, 212 Pa. 165; Tonkin v. Baum, 114 Pa. 414; Van
Horn v. Scott, 28 Pa. 316; Seiple v. Cumberland Val.,
Etc., R. R. Co., 129 Pa. 425.

*R. J. Graeff,* with him *Geo. M. Roads,* for appellee.

OPINION BY KEPHART, J., October 11, 1915 :
The plaintiffs brought suit on August 17, 1908, to re-
cover from the defendant company for coal they had
mined for it prior to May, 1902. With other pleas, that
of the statute of limitations was filed, and on the trial
the court on motion of defendant, entered a compulsory
nonsuit, which it subsequently refused to lift.

Several questions of law and fact were involved at the
trial, but the court's entry of judgment of nonsuit is
largely based on the construction placed on the evidence
in regard to the statute of limitations. It is urged that
Section 7 of the Act of April 25, 1850, P. L. 570, which is

as follows: "The provisions of the act passed the 27th of March, 1713, entitled 'An Act for the Limitations of Actions' shall not hereafter extend to any suit against any corporation or body politic which may have suspended business, or made any transfer or assignment in trust for creditors, or who may have at the time and after the accruing of the cause of action, in any manner ceased from or suspended the ordinary business for which said corporation was created" prevents the use of the plea of the statute of limitations, as it is directly shown by the record that while the coal was all mined by the plaintiffs prior to May, 1902, the defendants ceased all operations, at the colliery where the plaintiffs performed their labor, in 1906, at which time the statute was not a bar, and by the terms of the act it could not be successfully pleaded in this case.

Standing alone this act would prevent a recovery, but its efficacy as such bar is entirely overthrown by Section 21, of Article III, of the Constitution of 1874, which declares as follows, inter alia, "No act shall prescribe any limitations of time within which suits may be brought against corporations for injuries to persons or property, or for other causes, different from those fixed by general laws regulating actions against natural persons, and such acts now existing are avoided."

This section was under consideration by the Supreme Court in Re Grape Street, 103 Pa. 121, decided in 1883, in which it is said: "An attempt has been made to limit the effect of this provision by confining it to such suits or actions as are mentioned in the limitation act of March 27, 1713. But for this there is no warrant. It will be seen by consulting the first part of the section cited, that it is general; operative alike on natural and artificial persons, and the second is evidently designed to accord with the first; the intention is to prevent discriminations between these two classes of persons, and to put them on an equality in courts of justice. So, to prevent mistake, this, like the previous part of the section,

uses language that is as general and all-embracing as possible. There are to be no limitations of time, in suits against corporations, for injuries to persons or property, or for 'other causes,' different from those which govern suits of private persons." This interpretation has been adopted as the proper one by the courts since that time, and upheld in Seipel v. Cumberland Val., Etc., Railroad Co., 129 Pa. 425; Grugan v. Philadelphia, 158 Pa. 337; Bachman v. Philadelphia & Reading Railroad, 185 Pa. 95; Butler St., 25 Pa. Superior Ct. 357.

The appellant urges that the force of the Act of 1850 is preserved by virtue of the second section of the schedule to the Constitution, viz: "All laws in force in this Commonwealth at the time of the adoption of this Constitution not inconsistent therewith, and all right, actions, prosecutions and contracts shall continue as if this Constitution had not been adopted." The manifest purpose of the constitutional provision was to avoid discrimination between corporations and individuals and against corporations so far as statutes of limitations were concerned. The conclusion reached by the trial judge on this branch of the case was fully sustained by the authorities cited.

The other question raised is: When did the statute of limitations begin to run in this case? Such statutes are universally regarded with favor as statutes of repose, and are to be liberally construed with reference to their object and purpose. It begins to run from the time when the plaintiffs' cause of action accrues, and the difficulty in such a case as is here presented lies in determining when the cause of action is to be deemed as having accrued.

The right of action on a claim depending on a contingency or condition, does not accrue until the happening of the contingency or the fulfillment of the conditions, and the statute does not begin to run until then. Where, however, it is the right or duty of the claimant to comply with certain conditions in order to render his

right of action absolute, or where the performance of the condition is within his power, such performance must be accomplished within a reasonable time and the statute will begin to run, not from the time of actual performance, but from the time when it was reasonably practicable: 19 A. & Eng. of L., Line of Actions; Cook v. Carpenter, 212 Pa. 165. And whether a claim is barred by a statute of limitations applicable to it, is ordinarily for the jury, upon the evidence under instructions from the court: Seipel v. Cumberland Val., Etc., Railroad, 129 Pa. 425; Van Horn v. Scott, 28 Pa. 316; 25 Cyc. 1079.

In Tonkin v. Baum, 114 Pa. 414, it is stated: The contract as proved was a conditional one. The defendant was to pay when he sold the timber and got the money. The timber was settled for on June 4, 1880, until that time the plaintiff could not have sued upon the promise: 27 Cyc. 1082, 1274.

The plaintiffs were practical coal miners and made a contract to mine coal and load it on cars to be furnished by the defendant in its mine, at a stipulated price for mining the coal, and an additional price for loading it on the cars. It does not clearly appear when they began work, but it is shown that they stopped working in the fall of 1901, on account of the flooded condition of the property, at which time there was in the mine about 2,500 car loads of coal which they had mined, but they were prevented from loading because no cars were furnished by the defendant. The situation remained unchanged until in 1906, when all work was suspended, and the breaker, trestles and rails were removed by the defendant company. That the plaintiffs had a right of action independent of whether or not the coal was loaded on the cars, is evidenced by the fact that a fixed price was made for the coal cut and an additional price for coal loaded. It was not necessary for plaintiffs to await defendant's convenience as to furnishing cars or put-

ting the mine in condition to run before they could demand payment for the coal cut.

Plaintiffs' right to demand payment arose within a reasonable time after the coal had been cut. Such reasonable time would be fixed by the time they customarily received pay for their labor in the mines. When the first pay day passed after any certain quantity of coal had been cut and no payment received that should have been made on account of the coal cut, the plaintiff's right to sue was complete. When the defendant ceased to furnish cars on which to load the coal, this was an unequivocal breach of contract, and had this been an entire contract, it would have permitted an immediate right of action for the coal cut. Without this, however, and in the enforcement of the contract as we view it, the plaintiff had a right to be paid for the coal within a reasonable time after it was cut, and to enforce that right by suit. It is definitely fixed that they stopped working in the fall of 1901. Without discussing how long before that the right accrued, to sue for the coal cut, this would unquestionably fix the time when the statute of limitations began to run and being without the statutory period the court did not err in directing a compulsory nonsuit.

The judgment is affirmed.

DISSENTING OPINION BY ORLADY, J., Oct. 11, 1915:

I dissent from the conclusion reached by the majority of the court, for the following reasons:

A jury could properly find from the undisputed evidence in the case, that the suspension of the mine was a condition over which the plaintiffs did not have control, and under the undisputed facts they stood ready to load the coal into cars as soon as they would be furnished. They could not anticipate the action of the defendants in either proceeding with the work, or in dismantling the colliery, and the first affirmative notice to bind them was when the plant was wrecked. The defendants could have relieved all doubt of this situation at any time by

giving proper notice, and thus fix a definite time when the statute of limitations would begin to run. There is no undisputed fact in this record to warrant the court in fixing a particular date, and the neglect of the defendants to do so should not be made to work a satisfaction of these labor claims. It must be conceded that the performance of the contract was suspended through no fault of the workmen, and there are other facts in dispute and conflicting inferences to be drawn from them, to determine the good faith of the defendant's delay in not proceeding with the operation of the mine.

Where a party's right of action depends upon the happening of a certain event in the future, the cause of action accrues, and the statute begins to run only from the time when the event happens; and when the happening of the event is within the control of the defendant, as in this case, he should be required to establish the time of that event by clear testimony.

I feel that the running of the statute was suspended until the dismantling of the colliery or within a reasonable time thereafter. What is a reasonable time in such a case cannot be determined according to any precise rule, but depends upon the particular circumstances involved.

Where there are several breaches of a continuing contract, it is not required by the law to treat the contract as abandoned at the first breach or at any particular breach, and where several breaches amount to a total failure of performance, an action may be sustained on the theory that the statute does not begin to run until such time as the claimant elects to rely no longer on performance by the promisor.

I feel that the case should have been submitted to a jury, under proper instructions, and would reverse the judgment, with a procedendo.