420 A.2d 594

**A. J. ABERMAN, INC., Crescent Realty & Investment Company, and Garber Inc., Appellants,**

v.

**FUNK BUILDING CORPORATION,**

v.

**GENERAL ROOFING COMPANY and Koppers Company, Inc.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed June 6, 1980.

David R. Levin, Pittsburgh, for appellants.

Charles Means, Pittsburgh, for Funk Bldg. Corp., appellee.

Loyal H. Gregg, Pittsburgh, for General Roofing Co., appellee.

Gerald Hutton, Pittsburgh, for Koppers Co., Inc., appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal from an order refusing to take off a compulsory nonsuit. The issue is whether the lower court correctly ruled that appellants' action was barred by the statute of limitations.

In 1964, appellee Funk Building Corporation entered into a written contract with appellants for the construction of a shopping center. The contract provided for the installation of a twenty year bonded roof.[1] Funk subcontracted the roofing work to appellee General Roofing Company, and appellee Koppers Company provided the bond. The roof was installed and the building was completed by June 1965. The roof began to leak in 1965 and continued to leak thereafter. Funk originally repaired the leaks, but in September 1967 refused to undertake any further repairs and informed appellants to look elsewhere for relief. Thereafter, appellants hired Jack Josowitz, a local roofer, to repair the leaks. Josowitz repaired leaks from November 1967 until May 1973. All attempts at repair ultimately proved futile, however, and in June 1973 appellants had a new roof installed. They filed their complaint in the present action against Funk on December 21, 1973. General Roofing and Koppers were joined as additional defendants on February 24, 1974.

After appellants had finished presenting their evidence, appellees moved for and were granted a compulsory nonsuit on the ground that the action was barred by the six year statute of limitations applicable to actions on contracts. Appellants first argue that this statute was not applicable. Appellants next argue that even if the six year statute was

1. A twenty year bonded roof consists of four layers of felt and pitch.

applicable, a nonsuit should not have been entered, for the jury might have found that the statute had been tolled.

■ In ruling that appellants' action was barred, the lower court applied the six year statute of limitations set forth in the Act of March 27, 1713, 1 Sm.L. 76, § 1, 12 P.S. § 31 (Purdon's 1953) (Act of 1713),[2] which provides in pertinent part that "[a]ll actions . . . shall be commenced and sued . . . within six years next after the cause of such actions or suit and not after." Appellants argue that the lower court should have applied the twelve year provision contained in the Act of December 22, 1965, P.L. 1183, § 1, 12 P.S. § 65.1 (Purdon's Supp.1977) (Act of 1965).[3] The Act of 1965 provides:

"§ 65.1 Twelve years

No action (including proceedings) whether in contract, in tort or otherwise, to recover damages:

(1) For any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,

(2) For injury to property, real or personal, arising out of any such deficiency,

(3) For injury to the person or for wrongful death arising out of any such deficiency, or

(4) For contribution or indemnity for damages sustained on account of any injury mentioned in clauses (2) and (3) hereof, shall be brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of such improvement more than twelve years after completion of such an improvement.

§ 65.2 Injury, twelfth year after improvement completed

2. *See* Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 5527 (Purdon's Pamphlet 1979).

3. *See* Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended*, Act of April 28, 1978, P.L. 202, No. 53, § 10 (63.1), 42 Pa.C.S.A. § 5536 (Purdon's Pamphlet 1979).

Notwithstanding the provisions of section [65.1], in the case of such an injury to property or the person, or such an injury causing wrongful death, which injury occurred during the twelfth year after such completion, an action in tort to recover damages for such an injury or wrongful death may be brought within two years after the date on which such injury occurred: Provided, That in the case of wrongful death, such action shall also be brought within one year of the date of death. In no event, however, may any of such actions be brought more than fourteen years after the completion of construction of such an improvement.

§ 65.3 Extending limitation periods

Nothing in this act shall be construed as extending the period prescribed by the laws of this Commonwealth for the bringing of any action.

§ 65.4 Defense by person in possession or control of improvement

The limitation prescribed by this act shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring action.

§ 65.5 Definitions

As used in this act, the term 'person' shall mean an individual, corporation, partnership, business trust, unincorporated organization, association, professional association or joint stock company."

Appellants' argument is without merit. By its own terms, the Act of 1965 provides that "[n]othing in this act shall be construed as extending the period prescribed by the laws of this Commonwealth for the bringing of any action," 12 P.S. § 65.3, and in *Misitis v. Steel City Piping Co.*, 441 Pa. 339, 272 A.2d 883 (1971), the Supreme Court specifically ruled that the Act of 1965 did not create a procedural change in the statute of limitations but a substantive change. *See* Comment, *Limitations of Action Statutes for Architects and*

*Builders–Blueprint for Non–Action,* 18 Cath.U.L.Rev. 361, 384 (1969) (statutes effect change in substantive law). A true statute of limitations normally commences to run from the date of injury. The Act of 1965, however, protects certain persons from all claims arising more than twelve years after construction regardless of when the cause of action or injury arises. *See Freezer Storage v. Armstrong Coke Co.,* 476 Pa. 270, 382 A.2d 715 (1978); *Misitis v. Steel City Piping Co., supra* ; Comment, *supra* at 363. *See also Jostan Aluminum Prod. Co., Inc. v. Mount Carmel District Indus. Fund,* 256 Pa.Super. 353, 389 A.2d 1160 (1978); *Leach v. Philadelphia Sav. Fund Society,* 234 Pa.Super. 486, 340 A.2d 491 (1975); *General State Authority v. Kline,* 29 Pa. Cmwlth. 232, 370 A.2d 402 (1977). Thus, for example, if an injury should occur after the twelve year period, the particular statute of limitations applicable to the action might not commence to run until the date of injury, but the bar of the Act of 1965 would preclude any action against the persons protected by the Act without regard to whether the action was timely filed under that statute of limitations. *See Misitis v. Steel City Piping Co., supra* (describing effect of Act of 1965 on two year statute of limitation applicable to personal injury actions); Comment, *supra* at 368. *See also Kaczmarek v. Mesta Machine Co.,* 324 F.Supp. 298 (W.D.Pa. 1971) (machine not part of construction of improvement to property; therefore Act of 1965 does not apply; applicable period of limitation measured from date of injury). It follows that if a plaintiff is injured after the completion of construction, still he must initiate his action within the applicable statute of limitations. He cannot rely on the twelve year period provided in the Act of 1965, as that Act does not extend or otherwise change the period of limitations normally applicable to the specific type of action initiated. *See* Comment, *supra* at 368.

Other jurisdictions have reached the same result, holding that statutes similar to the Act of 1965 do not extend the period of limitations normally applicable. Thus, in *O'Connor v. Altus,* 67 N.J. 106, 335 A.2d 545 (1975), the Supreme Court

of New Jersey described the interplay of the ten year limitation provided in an act similar to the Act of 1965 and the two year statute of limitations applicable to personal injury actions. Said the Court:

As do many of its counterparts in other states, N.J.S.A. 2A:14–1.1 impliedly incorporates the tort limitation act generally applying to all personal injury actions. See Comment, *supra* at 385–86. Hence, this state's two–year statute of limitations, N.J.S.A. 2A:14–2, does operate to restrict the period in which actions can be initiated for accidents occurring within ten years after construction; but it does not serve to extend beyond ten years from the date construction was completed the time within which suit may be filed.

For example, an action for personal injuries sustained by an adult in an accident occurring, say, five years after the completion of construction still must be brought within two years thereafter–or seven years after construction. This statute does not preserve the remedy, in that instance, for an additional five years or until the full ten years from construction has elapsed. As indicated, both the two–year and ten–year statutes are at work in that situation. The latter does not expand the two–year period of the personal injury statute. It simply provides that in any event the suit must be started within ten years of the construction, regardless of when the cause of action accrues. The two–year period of N.J.S.A. 2A:14–2 controls to the extent that it "fits" within the ten years. So, with any injury to an adult occurring after the eighth year following construction, the action must be brought within whatever part of the ten–year span remains even though it is necessarily less than two years. In that circumstance the two–year period is "compressed" into some shorter period by operation of the ten–year statute. *But cf.* Comment, *supra* at 372. Had the legislature intended otherwise, it would likely have referred to an accident or accrual of a cause of action within ten years of construction rather than prohibiting the bringing of suit beyond that time.

67 N.J. at 122–23, 335 A.2d at 553.

Similarly, in *Smith v. American Radiator & Standard Sanitary Corp.*, 38 N.C.App. 457, 248 S.E.2d 462 (1978), the North Carolina Court, relying on *O'Connor v. Altus, supra,* held that the six year limitation provided in an act similar to the Act of 1965 did not extend the time for bringing an action otherwise barred as untimely by a three year statute of limitations. *Accord, Lee v. Fister,* 413 F.2d 1286 (6th Cir. 1969) (interpreting Kentucky statutes); *Federal Reserve Bank of Richmond v. Wright,* 392 F.Supp. 1126 (E.D.Va. 1975) (Virginia statutes); *Grissom v. North American Aviation, Inc.,* 326 F.Supp. 465 (W.D.Fla.1971) (Florida statutes); *Benning Construction Co. v. Lakeshore Plaza Enterprises, Inc.,* 240 Ga. 426, 241 S.E.2d 184 (1977); *Landon v. William Bros. Concrete Co.,* 149 Ga.App. 699, 256 S.E.2d 99 (1979); *Comptroller of Virginia ex rel. Virginia Military Institute v. King,* 217 Va. 751, 232 S.E.2d 895 (1977).

–2–

Having concluded that the lower court was correct in holding that the Act of 1713 applied, we are next required to consider appellants' argument that even so, a nonsuit should not have been entered, for the jury might have found that the statute had been tolled.

 In determining the propriety of an order entering a nonsuit, the plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, whether direct or circumstantial, and all conflicts must be resolved in the plaintiff's favor. *McDonald v. Ferrebee,* 366 Pa. 543, 79 A.2d 232 (1951); *Paul v. Hess Bros.,* 226 Pa.Super. 92, 312 A.2d 65 (1973); *McNett v. Briggs,* 217 Pa.Super. 322, 272 A.2d 202 (1970). A nonsuit may only be entered in a clear case where the facts and circumstances lead unerringly to but one conclusion. *Gill v. McGraw Electric Co.,* 264 Pa.Super. 368, 399 A.2d 1095 (1979); *Cornell Drilling Co. v. Ford Motor Co.,* 241 Pa.Super. 129, 359 A.2d 822 (1976); *Paul v. Hess Bros., supra.* When regarded in light of these principles, the evidence relevant to

the question of the statute of limitations in this case may be summarized as follows.

The construction of the shopping center was completed in the spring of 1965, and final payment on the contract was made in June of that year.. The roof was 116,200 square feet in area and covered several different stores. Almost immediately after construction had been completed, the roof began to leak in several different locations, and it continued to leak until it was replaced in June 1973.

On June 28, 1965, appellant Aberman sent a letter to Richard Funk of Funk Building Corporation, describing several leaks in the roof over the meat counter of the Thoroughfare Market. On July 12 Aberman sent another letter to Funk, informing Funk of a leak that had caused some damage in a storage area of the Thoroughfare Market. On August 10 Aberman sent another letter to Funk, describing four more leaks at the market. On September 14, 1965, Aberman sent another letter to Funk in which he claimed that there were leaks in the roof over the sales area and the bread counter at the Thoroughfare Market. Upon receipt of each complaint Funk sent men to repair the roof.

In 1966 there were more leaks. On June 28 of that year Aberman informed Funk that there were two more leaks at the Thoroughfare Market, one over the meat cutting area, and the other over the check–out counter. On August 22 Aberman complained of more leaks at Thoroughfare, and on September 20 he sent notice to Funk of leaks in the roof over the Karnes Bake Shop. Again, upon receipt of each complaint Funk sent men to repair the roof.

In 1967 there were still more leaks. On March 9, 1967, Aberman wrote to Funk, informing Funk that the portion of the roof over the K–Mart store had leaks in the men's department and the automotive department. On July 14 Aberman again complained of leaks at K–Mart. This time the leaks were in the roof near the air conditioners. On September 20 Aberman wrote to Funk, complaining of more leaks around the air conditioners at K–Mart. On September 25 Funk wrote Aberman, informing Aberman that he should

seek relief from the bonding company or should use some local roofer for repairs. Funk had several times in the past told Aberman that the bonding company should be responsible for repairs. He testified at trial that as the contractor, he was only responsible for repairs in the first year after construction and had no duty to repair after that. He admitted that repairs to a roof were common during the first year after construction.

When Funk had refused to undertake any further repairs, appellants contracted with Jack Josowitz, a local roofer, to make repairs on the roof. By November 1967, Josowitz had done at least five patching jobs on the roof over Thoroughfare Market, for which he submitted a bill of $161.39. He did more repairs in the following years; for his work from 1967 to 1973, he submitted a total of thirty–three separate invoices, with each invoice covering five or more patching jobs.[4]

At some time during 1971, Josowitz realized that "the roof was giving too much trouble," and he sought and received the assistance of A. S. Clapperton, a roofing expert. After removing and testing a small piece of the roof, Clapperton, on May 10, 1971, wrote Josowitz that there was insufficient coal tar pitch between the layers of the roof, and recommended that the roof be removed. In June 1973 appellants had the roof removed and a new roof installed in its place.

█ Generally, in an action for breach of contract the statute of limitations begins to run from the time of the breach. *See In re Dixon's Estate*, 426 Pa. 561, 233 A.2d 242 (1967), *citing*, 6 Williston, Contracts § 2004 (Rev.ed.1938); *Rankin v. Woodworth*, 3 Pen & W. 48 (1831); *Great Atlantic*

---

**4.** The invoices were dated as follows: August 6, 1968; November 3, 1968; December 17, 1968; June 11, 1969; October 15, 1969; September 20, 1969; February 26, 1970; March 10, 1970; April 22, 1970; October 20, 1970; November 21, 1970; February 8, 1971; February 24, 1971; March 15, 1971; July 19, 1971; September 22, 1971; December 15, 1971; January 19, 1972; March 3, 1972; April 11, 1972; June 1, 1972; June 19, 1972; July 5, 1972; August 23, 1972; September 25, 1972; October 12, 1972; November 11, 1972; December 5, 1972; December 20, 1972; February 6, 1973; March 7, 1973; April 2, 1973; and May 1, 1973.

& Pacific Tea Company, Inc. v. Rust Engineering Co., 75 Misc.2d 920, 349 N.Y.S.2d 243 (1973). In this case the construction of the roof was completed in June 1965; by then the breach had occurred, for by then the roof had been installed with insufficient coal tar between its layers. Accordingly, if measured from the date of breach, appellants' action was barred, since it was not filed until December 1973, and so fell far outside the period provided in the Act of 1713. *See McCloskey & Co., Inc. v. Wright,* 363 F.Supp. 223 (E.D.Va.1973); *M. T. Reed Const. Co. v. Jackson Plating Co.,* 222 So.2d 838 (Miss.1959).

■ It is also the law in Pennsylvania, however, that in the case of a latent defect in construction, the statute of limitations will not start to run until the injured party becomes aware, or by the exercise of reasonable diligence should have become aware, of the defect. *Schaffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267 (1963); *Scranton Gas & Water Co. v. Iron & Coal Company,* 167 Pa. 136, 31 A. 484 (1895); *Med–Mar, Inc. v. Dilworth,* 214 Pa.Super. 402, 257 A.2d 910 (1969); *General State Authority v. Lawrie & Green,* 24 Pa.Cmwlth. 407, 356 A.2d 851 (1976); *Robert E. Lamb, Inc. v. Delaware Pipe Fabricators, Inc.,* 42 Pa.D. & C.2d 461 (1967). *See Gensler v. Korb Roofers,* 37 Md.App. 538, 378 A.2d 180 (1977). Here the defect was latent–insufficient coal tar between the layers of the roof. The issue before us, therefore, is a double one: When the evidence is. regarded in the light most favorable to appellants, what is the answer to two questions; (1) When did appellants *in fact* become aware of the latent defect in the roof? And (2) when, by the exercise of reasonable diligence, *should* they have become aware of the defect?

The answer to the first question presents no difficulty. It is that appellants did not in fact become aware of the latent defect in the roof until Clapperton wrote Josowitz on May 10, 1971. If this answer were dispositive, the conclusion would follow that appellants' action is not barred by the Act of 1713, for the action was filed on December 21, 1973. However, plainly this answer is not dispositive; it simply

shows that it is necessary to move on to the second question, and to answer it. Doing so, the lower court concluded that appellants by the exercise of reasonable diligence should have become aware of the defect more than six years before they brought their action, from which the further conclusion followed that the action was barred. Thus, in appraising the correctness of the lower court's conclusion, the critical period on which we must focus our attention is the period between the date the roof was completed, in June 1965, and December 21, 1967, six years before the action was filed.

Before examining the evidence of what occurred during this critical period, we must consider the following statement by the Supreme Court in *Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A.2d 477 (1959):

> Whether the statute has run on a claim is usually a question of law for the judge, but where, as here, the issue involves a factual determination, i. e., what is a reasonable period, the determination is for the jury. *Chittenholm v. Giffin*, 361 Pa. 454, 65 A.2d 371 (1949); *Chittenholm v. Giffin*, 357 Pa. 616, 55 A.2d 324 (1947); *Gallagher v. Silver Brook Coal Co.*, 61 Pa.Super. 1, (1915).

*Id.*, 397 Pa. at 142, 153 A.2d at 481.

Interpreted literally, this statement suggests that whenever the issue is whether a plaintiff by the exercise of reasonable diligence should have become aware of a latent defect sooner than he in fact became aware of it, a question is raised that can only be decided by the jury, which is to say, a compulsory nonsuit may not be granted. *See Armacoast v. Winters*, 258 Pa.Super. 424, 427 n. 1, 392 A.2d 866, 868 n. 1 (1978). Such an interpretation, however, would be improper. No doubt in many cases–perhaps in most–the answer to the question of what is reasonable will depend on the resolution of disputed or close issues of fact. *Smith* was just such a case. *And see Bayless v. Philadelphia Nat. League Club*, 579 F.2d 37, 41 (3d Cir. 1978). In other cases, however, the facts will not be close but instead will be undisputed and will lead unerringly to the conclusion that the length of time was unreasonable. In such cases the decision on reasonableness

is made by the court, as a matter of law, and not by the jury, as a matter of fact. *See Cartmell v. Slavik Company,* 68 Mich.App. 202, 242 N.W.2d 66 (1976) (KAUFMAN, J., dissenting).

Our conclusion that the broad language in *Smith* should not be interpreted as holding that in every case, regardless of its facts, the decision on reasonableness must be made by the jury, is supported by the cases cited in *Smith.* In the two decisions in *Chittenholm v. Giffin, supra,* the facts were in what the Court described as "sharp conflict." Given this conflict, the Court ruled that the question of what was a reasonable time was one of fact for the jury. The decision in *Gallagher v. Silver Brook Coal Co., supra,* is also consistent with our interpretation of *Smith,* for it contradicts a literal interpretation of the broad language in *Smith.* In *Gallagher,* while commenting that the question of reasonable time may ordinarily be one for a jury, this court nevertheless affirmed the lower court's grant of a compulsory nonsuit on the ground that the statute of limitations had run. *See also Huber v. McElwee–Courbis Construction Co.,* 392 F.Supp. 1379, 1381 (E.D.Pa.1974) (facts not in dispute; court therefore granted summary judgment); *Irrera v. Southeastern Pennsylvania Transportation Authority,* 231 Pa.Super. 508, 331 A.2d 705 (1974) (affirming grant of summary judgment).

It is now in order to examine the evidence of what occurred during the critical period between June 1965 and December 1967 so that we may determine whether the lower court was correct in concluding as a matter of law that if appellants had exercised reasonable diligence, they would have become aware of the defect in the roof more than six years before they brought this action. Having made this examination, we have concluded that the lower court was correct.

 The leaks began, it will be recalled, immediately upon completion of the roof, in June 1965. We do not suggest that these first leaks alone gave notice to anyone who was reasonably diligent of a possible defect in the roof.

Ordinarily, whether the first leak or leaks represented notice of a defect would be a decision for the jury. *See Cunningham v. Frontier Lumber Co.*, 245 S.W. 270 (Tex.Civ.App. 1922) (doubtful that cause of action accrued, for statute of limitations purposes, at time of first leak in roof); *Cartmell v. Slavik Company, supra* (discovery of true condition of roof may not have necessarily occurred on date roof first began to leak). Here, however, the roof continued to leak, during the balance of 1965, all of 1966, and all of 1967. In addition, the leaks occurred in a variety of locations, first over the Thoroughfare Market, then over the Karnes Bake Shop, and then over the K–Mart store. And finally, all of Funk's repeated efforts to repair the leaks—efforts made in 1965, throughout 1966, and until September 1967—proved futile. Given this evidence, all of it undisputed, the conclusion is inescapable that had appellants exercised reasonable diligence, they would have investigated why the roof was leaking, and would have discovered the defect in the roof at least by December 1967, if not well before.

■ In an attempt to justify their failure to investigate the leaks, appellants point to the fact that Funk testified that roof leaks are common in the first year after construction of a building. This testimony is not as helpful to appellants as they suggest, for at most it demonstrates only what Funk thought about first year leaks, not what a reasonably diligent owner of a leaking building would think. But in any case, giving Funk's testimony the effect appellants urge upon us, still, the first year after construction ended in June 1966, and the roof continued to leak, during the balance of 1966, and all of 1967.

The fact that Funk attempted to repair the leaks does cause us to consider the possible application of a legal doctrine that some jurisdictions have developed in cases such as the present case. Appellants have not explicitly invoked the doctrine, but they have argued Funk's attempts to repair, and therefore, in fairness and for the sake of com-

plete discussion, we shall consider whether the doctrine, if applied, would lead to a different result.

In *Little Rock School District v. Celotex Corp.*, 264 Ark. 757, 574 S.W.2d 669 (1979), the court considered the vendor's attempts to repair a leaking roof as conduct that might have tolled the statute of limitations, and therefore held that the attempts raised a factual question for resolution by the jury, stating that a statute of limitations " 'is tolled so long as the vendor insists that the defect can be repaired and is attempting to do so.' " *Id.* at 767, 574 S.W.2d at 674, *quoting Louisville Silo & Tank Co. v. Thweatt*, 174 Ark. 437, 295 S.W. 710 (1927). *See Weeks v. Slavik Builders, Inc.*, 24 Mich.App. 621, 180 N.W.2d 503, *aff'd*, 384 Mich. 257, 181 N.W.2d 271 (1970) (repairs to leaking roof tolled statute of limitations). *See also Bulova Watch Co. v. Celotex* 46 N.Y.2d 606, 415 N.Y.S.2d 817, 389 N.E.2d 130 (1979) (action in breach of warranty for leaking roof barred by statute of limitations but actions on warranty bonds not barred as each breach of promise to repair under bond represents separate cause of action).

The doctrine that repairs by a defendant may toll the statute of limitations has not been accepted by all of the jurisdictions that have had occasion to consider it. *Compare Little Rock School District v. Celotex, supra; Southern Calif. Enterprises, Inc., v. D.N. & E. Walter & Co.*, 78 Cal.App.2d 750, 178 P.2d 785 (1947); *Bewley Furniture Co. v. Maryland Casualty Co.*, 271 So.2d 346 (La.App.1972); *[and] Nowell v. Great Atlantic & Pacific Tea Co.*, 250 N.C. 575, 108 S.E.2d 889 (1959) *with Binkley Co. v. Teledyne Mid–America Corp.*, 333 F.Supp. 1183 (D.C.Mo.1971), *aff'd*, 460 F.2d 276 (8th Cir. 1971); *Bobo v. Page Engineering Co.*, 285 F.Supp. 664 (W.D.Pa.1967), *aff'd*, 395 F.2d 991 (3d Cir. 1968); *[and] K/F Development & Investment Corp. v. Williamson Crane and Dozer Corp.*, Fla.App., 367 So.2d 1078 (1979). As expressed by the Arkansas Court in *Little Rock School District v. Celotex, supra*, the doctrine represents nothing more than a particularized form of the more general doctrine of estop-

pel, for not only must the defendant attempt to make repairs but he must also represent to the plaintiff's detriment that the repairs will be sufficient to cure the defect. *See* Annotation, 68 A.L.R.2d 1277 (1976). *See also Walker Manufacturing Company v. Dickerson, Inc.*, 560 F.2d 1184 (4th Cir. 1977); *City of Kingsport v. S.C.M. Corp.*, 352 F.Supp. 288 (E.D.Tenn.1972). Without reliance by the plaintiff upon the defendant's representations that his repairs will cure the defect, there is no estoppel. Thus mere attempts to repair unaccompanied by representations that the repairs will cure the defect should not toll the statute of limitations. *Compare Zahler v. Star Steel Supply Co.*, 50 Mich.App. 386, 213 N.W.2d 269 (1973) *with Weeks v. Slavik Builders, Inc., supra*. *See* Annotation, *supra; Gaffney v. Unit Crane and Shovel Corp.*, 49 Del. 381, 117 A.2d 237 (1955); *Bowman v. Oklahoma Natural Gas Co.*, 385 P.2d 440 (Okl.1963).

The appellate courts of this state apparently have not yet decided whether to adopt the repair doctrine, although the federal district court in *Bobo v. Page Engineering Co., supra*, relying on the decision by the court of common pleas in *Lewis v. Jacobsen*, 30 Pa.D.&C.2d 623 (Erie 1962),[5] concluded that the doctrine would be rejected. With respect to the correctness of the district court's conclusion, it should be noted that both the Supreme Court and this court have recognized that in context other than repairs, a plaintiff may show that the defendant is estopped to invoke the statute of limitations. *See Nesbitt v. Erie Coach Co.*, 416

---

5. In *Lewis v. Jacobsen, supra*, the plaintiff purchased a potato harvester from the defendant in 1956. Dissatisfied with the performance of the harvester during the 1956 season, the plaintiff returned it to the defendant's factory for repairs. Plaintiff again used the harvester in 1957 but it still did not work properly. In 1958 the parties again cooperated in trying to put the harvester in working order. Plaintiff finally brought suit in 1962. In holding the suit barred by the four year statute of limitations, the court stated that "there is nothing in the pleadings which would suspend the statute's operation. The allegation in the complaint that the plaintiffs and defendant cooperated in trying to repair the machine up until the summer of 1958 is insufficient for such purpose." *Id.* at 625.

Pa. 89, 204 A.2d 473 (1964) (promise to settle may have lulled plaintiff into false sense of security); *Acker v. Palena*, 260 Pa.Super. 214, 393 A.2d 1230 (1978) (defendant physician's promise that vision would return); *Barshady v. Schlosser*, 226 Pa.Super. 260, 313 A.3d 296 (1973) (defendant physician's assurances that condition was temporary). *See also Walker Manufacturing Company v. Dickerson, Inc., supra* (settlement negotiations). Since the repair doctrine would seem nothing more than a form of estoppel, we cannot say with any degree of certainty that it would be rejected by the Supreme Court or this court.

Arguably, we should decide now whether to accept or reject the repair doctrine. We have concluded, however, that we should not do so, for the doctrine has not been explicitly argued to us. Furthermore, we do not need to decide whether to accept or reject the doctrine, for on the record before us, even if the doctrine were accepted, it would not change the result. The record demonstrates that while Funk attempted to repair the roof, he never admitted that there was a defect, much less represent that his repairs would cure it. Thus, no estoppel could arise. *Gaffney v. Unit Crane & Shovel Corp., supra; Bowman v. Oklahoma Natural Gas Co., supra. See Standard Alliance Indus., Inc. v. Black Clawson Company*, 587 F.2d 813 (6th Cir. 1978) (assuming *arguendo* that Ohio courts would adopt repair doctrine, no estoppel on the facts of the specific case). Moreover, in his letter to Aberman on September 25, 1967, Funk refused to be responsible for any more repairs and told Aberman to hire someone else to repair the roof. Therefore, on that date any estoppel even arguably created by Funk's previous attempts to repair the roof would have ended, and the statute of limitations would have started to run. Appellants, however, did not bring their action until more than six years later. *See Grand Island School District v. Celotex*, 203 Neb. 559, 279 N.W.2d 603 (1979).

Affirmed.