Westinghouse Broadcasting Company, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Board of Finance and Revenue, Appellee.

Argued March 4, 1974, before President Judge
Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Frank A. Sinon,* with him *Sherill T. Moyer,* and *Rhoads, Sinon & Reader,* for appellant.

*M. David Smeltz,* Deputy Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, June 27, 1974:

In this tax appeal under Section 1104 of The Fiscal Code, Act of April 9, 1929, P. L. 343, *as amended,* 72 P.S. §1104 (Supp. 1973-1974), we are confronted with a novel issue raised in a novel way.

Having taken the appeal, taxpayer appellant, prior to seeking de novo hearing on its appeal, filed a motion for summary judgment seemingly pursuant to Pa. R.C.P. No. 1035 raising a purely legal issue, which, if sustained, would be dispositive of the appeal. In utilizing Pa. R.C.P. No. 1035, appellant contends that tax appeals are within the original jurisdiction of this Court in that the appeal is de novo, thus likening it to litigation originating in this Court.[1] We cannot agree.

---

[1] Applicable through Rule No. 117 of the Rules of the Commonwealth Court.

Appeals under Section 1104 of The Fiscal Code are clearly within the class of cases identified as direct appeals from administrative agencies—Section 403(1) and Section 508(a)(29) of the Appellate Court Jurisdiction Act of 1970 (ACJA), Act of July 31, 1970, P. L. 673, 17 P.S. §§211.403, 211.508 (Supp. 1973-1974)—and *not* within its original jurisdiction as defined by Section 401 of the ACJA, 17 P.S. §211.401 (Supp. 1973-1974). That some of these appeals are heard de novo, while others are not but heard solely upon the record made before the administrative agency, in no way translates them into the class of cases within the scope of our original jurisdiction. Nevertheless, this Court will dispose of the motion as we are of the view that this motion raising a pure legal issue may appropriately be disposed of prior to further proceedings. *See* 1 Standard Pennsylvania Practice 345, §298, and cases cited therein. Both the appellant and the Commonwealth have orally and in briefs fully presented the procedural steps taken in the proceedings below which appellant asserts constitute reversible error.

These facts are not in dispute and disclose that appellant, Westinghouse Broadcasting Company, Inc., timely filed its corporate net income tax report for the calendar year ending December 31, 1970, reflecting a tax liability in the amount of $1,452,324.00. The taxing authorities settled the tax account consistent with appellant's aforementioned tax report. However, appellant, in its tax report, had employed an improperly constructed gross receipts apportionment fraction which caused the taxing authorities' settlement of its tax account to reflect a greater tax liability than appellant considered proper. Therefore, appellant moved to correct this by timely filing a petition for resettlement pursuant to Section 1102 of The Fiscal Code, Act of April 9, 1929, P. L. 343, *as amended,* 72 P.S. §1102 (Supp. 1973-1974), contesting the settlement of appel-

lant's tax account. Appellant's petition for resettlement was refused by the taxing authorities. Thereafter, appellant filed a timely petition for review with the Board of Finance and Revenue pursuant to Section 1103 of The Fiscal Code, 72 P.S. §1103 (Supp. 1973-1974).

On September 27, 1972, the Board of Finance and Revenue issued its first decision and order in this matter resettling corporate net income tax against appellant in the amount of $1,112,895.91 in accordance with the prayers of appellant.

No appeal was filed by the taxing authorities from this first decision and order of the Board of Finance and Revenue within the sixty day period prescribed by Section 1104 of The Fiscal Code, 72 P.S. §1104 (Supp. 1973-1974).

On March 23, 1973, nearly six months after the first decision of the Board of Finance and Revenue, the taxing authorities, purporting to act pursuant to Section 1105 of The Fiscal Code, 72 P.S. §1105, made a second resettlement of the appellant's tax account in the amount of $1,452,324.00 computing the tax liability in the same amount and manner as its original "settlement" against appellant, from which appellant sought review before the Board of Finance and Revenue, and was sustained. The propriety of this action by the taxing authorities is the issue now before us.

To exhaust its administrative remedies, appellant sought administrative review of the action of the taxing authorities by timely filing a second petition for review pursuant to Section 1103 of The Fiscal Code, 72 P.S. §1103 (Supp. 1973-1974). After hearing, the Board of Finance and Revenue issued its second decision and order refusing appellant's second petition.

Now seeking judicial review, appellant perfected this instant appeal from the Board's second order pursuant to Section 1104 of The Fiscal Code, 72 P.S.

§1104 (Supp. 1973-1974). Appellant raises the pure legal issue of the propriety of the procedure employed by the taxing authorities below in this motion.

Can the taxing authorities, having failed to appeal from the first decision and order of the Board of Finance and Revenue as provided for by Section 1104 of The Fiscal Code, negate said decision by resettling appellant's tax account pursuant to Section 1105 of The Fiscal Code? We think not.

The intent of the legislature in enacting Article XI of The Fiscal Code was to provide a uniform statutory scheme through which parties would be afforded notice of settlement of a tax account and aggrieved parties would be afforded an opportunity to be heard on administrative and judicial appeal, *Commonwealth of Pennsylvania v. Smith & Hartnett Co.*, 35 Dauph. 358, 17 Pa. D. & C. 474 (1931). At issue is the relationship between Section 1104 and Section 1105 of The Fiscal Code.

Section 1104 of The Fiscal Code provides in pertinent part: "Any person, association, corporation, public officer, or other debtor, *or the Commonwealth of Pennsylvania,* aggrieved by the decision of the Board of Finance and Revenue . . . may within sixty (60) days, appeal to the [Commonwealth Court] from the decision of the Board of Finance and Revenue. . . ." (Emphasis added.)

Section 1105 of The Fiscal Code provides in pertinent part: "Within two years after the date of any settlement or resettlement made subsequent to June first, one thousand nine hundred and twenty-nine, except such as have been appealed from, the Department of Revenue, with the approval of the Department of the Auditor General, may make a resettlement. . . ."

It is well settled that in order to properly effectuate the overall purpose of the statutory scheme of Article XI, as well as to provide for finality in the determina-

tion of the merits of any given petition, it is necessary that the statutory procedure be given strict compliance. *Commonwealth v. Yorktowne Paper Mills, Inc.,* 419 Pa. 363, 214 A. 2d 203 (1965).

This Court is of the opinion that strict compliance with the statutory scheme means that if the Commonwealth is an aggrieved party to a determination of the Board of Finance and Revenue, its recourse is to proceed under Section 1104 of The Fiscal Code to appeal to the Commonwealth Court. The Commonwealth cannot neglect or decline to appeal from the Board's adverse determination, wait for a period of time, and resettle the tax account as though review by the Board had never taken place. Such a procedure would have the effect of a unilateral reversal of the Board's decision without judicial review.

The Commonwealth argues that the language of Section 1105 affords it the power to resettle "any" tax account, including resettlements which are embodied in decisions and orders of the Board of Finance and Revenue,[2] unless such resettlements have been appealed to a court. However, the Commonwealth's theory is contrary to common sense as well as established principles of law. First, it is inconceivable that the legislature would provide a clearly defined appellate procedure and then intend that such appellate procedure could be subverted by the taxing authorities by enabling them to recommit the tax matter at hand for a succeeding round (or rounds) of administrative review. Secondly, recommitting the matter for administrative review would make meaningless the sixty day time

---

[2] The language of Section 1103 of The Fiscal Code, Act of April 9, 1929, P. L. 343, *as amended,* 72 P.S. §1103 (Supp. 1973-1974), gives the Board the power to ". . . sustain the action taken [by the taxing authorities] on the petition for resettlement, or . . . [to] *resettle* the account upon such basis as it shall deem according to law and equity." (Emphasis added.)

limitation for appeal imposed by Section 1104 vis-a-vis the Commonwealth, because the Commonwealth could fail or neglect to appeal within the prescribed time, but, pursuant to Section 1105, put the matter at issue once again and start the administrative machinery anew with a new opportunity to appeal any adverse administrative determination. Both of these results would appear to contradict firm principles of statutory construction, to wit, that the legislature would not intend a result that is absurd, impossible of execution or unreasonable, and that the legislature would intend the *entire* statute to be effective and certain, Section 1922(1) and (2), Statutory Construction Act of 1972, 1 Pa. S. §1922(1) and (2). And in the third place, the Commonwealth's theory is contrary to the concept of finality in the determination of the merits of any given petition. *See Commonwealth v. Yorktowne Paper Mills, Inc., supra.*

Recognizing these dangers, nevertheless, we are mindful of this Court's responsibility to construe the statute as written, and, therefore, we must discern the intent of Section 1105 to decide whether the taxing authorities have misused this provision of The Fiscal Code.

Upon consideration of Section 1105 and the entire statutory scheme under Article XI of The Fiscal Code, we find that Section 1105 was never intended to confer a power upon the taxing authorities to review a resettlement of a tax account which is embodied in the decision and order of the Board of Finance and Revenue. The Commonwealth's argument that such a resettlement is the same as any other departmental resettlement conveniently ignores the language of Section 1103 which defines the nature and effect of a Board of Finance and Revenue review of a petition pursuant to Section 1103: "The Board of Finance and Revenue shall act *finally in disposition of such petitions* within

six months after they have been received. . . ." (Emphasis added.)

Where the statute clearly provides that the disposition of the Board shall be final, it is clear that the deci-sion and order of the Board of Finance and Revenue is not merely "any" resettlement, rather it is a final decision and order of the Board which may embody a resettlement of the tax account. The remedy afforded to an aggrieved party, including the Commonwealth, from a decision of the Board is provided by Section 1104. Such an appeal to a court of law pursuant to Section 1104 is the only orderly and appropriate procedure to seek review and reversal of the final administrative determination.

The language of Section 1105 is designed to afford the taxing authorities a means of reopening an officially closed *departmental* settlement or resettlement in which an error causes a tax account to remain not in accordance with the law. No greater power was specifically conferred by statute to empower the taxing authorities to pass again upon a final decision and order of the Board of Finance and Revenue.

Finally, appellant urges this Court to enter an affirmative judgment determining tax liability in accordance with its prayers, and in addition, to enter an award in its favor for accrued interest running from March 18, 1971.[3] Appellant cites *Cities Service Oil Co. v. Pittsburgh*, 449 Pa. 481, 297 A. 2d 466 (1972), as its authority that it is entitled to recover interest on the amounts erroneously paid to and improperly withheld

---

[3] Appellant chooses this date because it is the date of the decision of *Commonwealth v. General Foods Corp.*, 442 Pa. 273, 277 A. 2d 138 (1971), which is the case appellant urges governs the substantive merits of its appeal. We did not discuss the substantive merits of its appeal in this decision, and we do not comment on the propriety of appellant's date from which it asserts it is entitled to accrued interest.

by the Commonwealth. In *Cities Service,* our Supreme Court stated:

"We granted review [of this taxpayer's petition for a tax refund] only to determine the date from which interest should be computed when a taxpayer has paid an improper mercantile tax assessment and subsequently made demand for a refund.

"If a taxpayer is entitled to a tax refund, he is also entitled to interest on the refund so long as no statute or public policy militates against it. [Citation omitted.]" 449 Pa. at 485, 297 A. 2d at 468.

While the above is true, it is nevertheless not a principle of law that can be applied to this case in its present posture. A distinction must be made between the instant case, which is an administrative appeal adjudicating the power and authority of the taxing departments to administer Section 1105 of The Fiscal Code under a given set of circumstances, and a tax refund case, where interest is sought to be secured on a finally determined amount of overpaid taxes. *Cities Service* is such a tax refund case, and is authority only therefor.

The legislature, in its wisdom, chose to prescribe a remedy to a taxpayer for refund of taxes wrongfully assessed and collected or erroneously paid within the statutory scheme of The Fiscal Code. *See* Act of April 9, 1929, P. L. 343, §503, *as amended,* 72 P.S. §503 (Supp. 1973-1974). Appellant cannot at this time seek to circumvent its adequate remedy to recover a tax refund plus interest in this administrative appeal. The decision of this administrative appeal properly deals only with appellant's tax liability.

For the above reasons, we enter the following

### ORDER

Now, June 27, 1974, appellant's motion for summary judgment is hereby sustained. The March 22,

1973, Section 1105, resettlement made by the Department of Revenue and approved by the Auditor General is hereby set aside.