425 A.2d 428

Genevieve ANTHONY, Admrx. of the Estate of Robert D. Anthony; Vernell Brown, Admrx. of the Estate of William H. Brown; Emily L. Mellott, Admrx. of the Estate of Ralph L. Mellott; Mabel Sharp, Admrx. of the Estate of Gilbert H. Sharp; and Elizabeth Straver, Admrx. of the Estate of Kelvin Straver

v.

KOPPERS COMPANY, INC., Allied Chemical Corporation and Salem Corporation, Appellants

v.

BETHLEHEM STEEL CORPORATION.

Superior Court of Pennsylvania.

Argued April 15, 1980.

Filed Nov. 7, 1980.

Reargument Denied Feb. 13, 1981.

84

Avrum Levicoff, Pittsburgh, for Koppers, appellant.

John W. Jordan, IV, Pittsburgh, for Allied, appellant.

Herbert B. Conner, Pittsburgh, for Salem, appellant.

Blair S. McMillin, Pittsburgh, for Bethlehem, appellee.

Scott L. Melton, Conway, for Anthony, et al., appellees.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order denying motions for summary judgment. The appeal raises an important question concerning the statutes of limitation applicable to actions in survival and for wrongful death.

Each appellee is administrator of the estate of her deceased husband. In October 1977 appellees brought actions in survival and for wrongful death against appellants, claiming that emissions from coke ovens erected by appellants had caused the decedents to contract cancer of the lungs, which ultimately resulted in their deaths. In August 1978 appellants joined Bethlehem Steel Corporation, the decedents' employer, as an additional defendant.[1] During discovery, appellees stated that all the decedents had died more than two years before the actions were brought.[2] Thereupon each appellant filed a motion for summary judgment, arguing that the one year statute of limitation applicable to actions for wrongful death (the Act of 1855) and the two year statute of limitation applicable to actions in survival (the Act of 1895) barred appellees' suits. The lower court denied the motions and certified the question for interlocuto-

1. Bethlehem Steel Corporation is not an appellant on this appeal but has nevertheless filed a brief in support of appellants' position. Many of the arguments considered on this appeal and attributed to appellants are in fact taken from Bethlehem Steel Corporation's brief.

2. In their answers to appellants' interrogatories, appellees stated that the decedents had died on the following dates: Robert D. Anthony on August 5, 1967; Kelvin Straver on October 11, 1969; William H. Brown on October 24, 1969; Gilbert C. Sharp on December 12, 1969; and Ralph L. Mellott on July 5, 1972.

ry appeal to this court. On August 10, 1979, we granted permission to appeal.[3]

Appellants argue that the last day on which the statutory periods could have started to run was the day of the decedents' deaths; on this view, each of the actions is barred, and summary judgment should have been entered. Appellees argue, and the lower court adopted the view, that the statutory periods did not start to run until they, as the decedents' representatives, knew or reasonably should have known of the causal connection between the emissions from the coke ovens and the decedents' cancers, and that as to that date, there is a genuine issue of material fact sufficient to prevent the entry of summary judgment in appellants' favor. In other words, appellees argue that what has been termed "the discovery rule" applies, despite the fact that all the decedents died several years before the actions were brought.

1

In *Fries v. Boisselet*, 9 Serg. & R. 128, 130 (1822), Chief Justice TILGHMAN commented that "[i]t would be a laborious and unprofitable task to examine all the cases which have been decided on the statute of limitations." We agree, and therefore shall not attempt the task. Instead, we shall discuss only an illustrative few of the many cases that have interpreted the statutes of limitation, in particular, those that have developed and applied the discovery rule.

It has often been stated that the plaintiff's knowledge of his injury is immaterial and that the statute of limitations

---

**3.** Our jurisdiction is pursuant to the Act of July 9, 1976, P.L. 586, No. 142, as amended by Act of April 28, 1978, No. 53, 42 Pa.C.S. § 702(b), which provides:

When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order. 42 Pa.C.S. § 702(b). *See also* Pa.R.A.P. Rules 312, 1311.

starts to run from the time the tortious act is committed even though the plaintiff neither knows nor has reason to know of his injury. Restatement (Second) of Torts § 899, comment e. *See Bernath v. LeFever,* 325 Pa. 43, 189 A. 342 (1937); *Noonan v. Pardee,* 200 Pa. 474, 50 A. 255 (1901); *Moore v. Juvenal,* 92 Pa. 484 (1880). Application of this rule often led to a result that was harsh in that the plaintiff was blamelessly ignorant of his injury. *See Bernath v. LeFever, surpa; Noonan v. Pardee, supra.* The result was justified on the ground that statutes of limitation were creations of the legislature, which had written them in terms of "injury" and "rights of action" and not in terms of discovery or notice, "so that a judicial construction *limiting* [a statute], to *notice* of a right of action would be sheer legislation." *Fleming v. Culbert,* 46 Pa. 498, 501 (1864) (original emphasis). Moreover, the concept of notice was considered to be so flexible and difficult to prove that it was apprehended that "a jury would fix it one way in th[is] case and another way in the next, and thus a stable rule of statute law would fluctuate with the changes and chances of the jury-box." *Fleming v. Culbert, supra.*

It appears that the First Pennsylvania case accepting the view that ignorance of an injury may delay the start of the statute of limitations was *Lewey v. Fricke Coke Co.,* 166 Pa. 536, 31 A. 261 (1895). In *Lewey* the defendant had mined under the plaintiff's land in 1884, but the plaintiff did not discover that any coal had been taken until 1891. He brought suit in 1892 and the issue on appeal was whether the lower court had been correct in holding that the six year statute of limitation had started to run upon the removal of the coal in 1884 and therefore had run by 1890, a year before the plaintiff knew of his injury. In reversing, Justice WILLIAMS said:

> It seems to be the general doctrine in courts of law that the plaintiff is bound to know of an invasion of the surface of his close. The fact that his land is a forest and that the defendant goes into its interior to trespass by the cutting of timber, does not relieve against its operation.

What is plainly visible he must see at his peril, unless by actual fraud his attention is diverted and his vigilance put to sleep. But ought this rule to extend to a subterranean trespass? The surface is visible and accessible. The owner may know of its condition without trespassing on others and for that reason he is bound to know. The interior of the earth is invisible and inaccessible to the owner of the surface unless he is engaged in mining operations upon his own land; and then he can reach no part of his own coal stratum except that which he is actually removing. If an adjoining landowner reaches the plaintiff's coal through subterranean ways that reach the surface on his own land and are under his actual control, the vigilance the law requires of the plaintiff upon the surface is powerless to detect the invasion by his neighbor of the coal one hundred feet under the surface.

166 Pa. at 544–45, 31 A. at 262.

He continued:

The law does not require impossibilities. It recognizes natural conditions, and the immutability of natural laws. The owner of the surface cannot see, and because he cannot see the law does not require him to take notice of what goes on in the subterranean estates below him with which he has no communication through openings within his inclosures or under his control.

*Id.*, 166 Pa. at 545, 31 A. at 263.

Finally, he concluded:

The owner of land may be present by himself or his servants on the surface of his possessions no matter how extensive they may be. He is for this reason held to be constructively present wherever his title extends. He cannot be present in the interior of the earth. No amount of vigilance will enable him to detect the approach of a trespasser who may be working his way through the coal seams underlying adjoining lands. His senses cannot inform him of the encroachment by such trespasser upon the coal that is hidden in the rocks under his feet. He cannot reasonably be held to be constructively present where his

presence is in the nature of things impossible. He must learn of such a trespass by other means than such as are within his own control, and until these come within his reach he is necessarily ignorant of his loss. He cannot reasonably by required to act until knowledge that action is needed is possible to him. *We are disposed to hold therefore that the statute runs against an injury committed in or to a lower stratum from the time of actual discovery, or the time when discovery was reasonably possible.*

*Id.,* 166 Pa. at 547, 31 A. at 263 (emphasis added).

The rule announced in *Lewey*—that the statute runs from the time of actual discovery, or the time when discovery was reasonably possible"—has been termed the discovery rule, and since *Lewey* has been applied to other cases involving hidden subterranean injuries. *See Smith v. Bell Telephone Co.,* 397 Pa. 134, 153 A.2d 477 (1959); *Gotshall v. Langdon,* 16 Pa.Super. 158 (1901). *And see Petrelli v. West Virginia— Pittsburgh Coal Co.,* 86 W.Va. 607, 104 S.E. 103 (1920). *But see Noonan v. Pardee, supra.* It is important to note the fact that in *Lewey,* and for that matter in later underground injury cases such as *Smith v. Bell Telephone Co., supra,* application of the discovery rule is not based upon any specific wording in the particular statute of limitation in question. Instead, application of the rule has been based upon the recognition that if a party, despite the exercise of diligence, cannot ascertain his injury, the statute of limitations *should not* run against his claim. In short, the discovery rule is a judicial creation, fashioned to solve a specific problem, namely, whether the law should preclude recovery for an injury that not even a diligent party may reasonably be expected to discover.

Perhaps recognizing that an injury hidden in the bowels of the earth is no more difficult to discover than one hidden in the bowels of a patient, *see Morgan v. Grace Hospital, Inc.,* 149 W.Va. 783, 144 S.E.2d 156 (1965), the Supreme Court has applied the discovery rule to medical malpractice cases. While the possibility of this application was discussed as

early as the decision in *Byers v. Bacon*, 250 Pa. 564, 95 A. 711 (1915),[4] the first actual application apparently occurred in *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959). In *Ayers*

**4.** In *Byers* the surgeon left a rubber tube in the plaintiff's arm after surgery in 1910. The tube was not visible and the plaintiff did not know that it remained in his arm; he continued under the care of his family physician. The tube was first discovered and removed on June 8, 1911. Since the plaintiff had been discharged from the hospital on March 21, 1910, and had not brought his action until February 18, 1913, the lower court ruled that the action was barred by the Act of 1895 and refused to permit the plaintiff to present evidence concerning his failure to discover the injury. Reversing, the Supreme Court stated:

It may be that the court below was right in holding that under any aspect in which the case may be placed by additional testimony, the bar of the statute of limitations is fatal to the claim of plaintiff. But we do not see that this is necessarily so. The negligence charged was not in the insertion of the tube, but it was in the failure to remove it at the proper time, or in the failure to give notice of its presence, that it might be removed by another, when it had served its proper purpose. It could hardly have been intended to remain permanently in the body of plaintiff, and he should have been allowed to show when and by whom the tube, which was inserted by defendant, should have been removed. It may be that good surgical practice required it to be kept in the wound after plaintiff was discharged from the hospital and placed under the care of his family physician. If defendant was at fault in permitting the tube to remain in the wound when it should have been removed, or in failing to give notice of its presence, the time when such dereliction of duty occurred should have been shown, as that would constitute the real injury, and would start the running of the statute of limitations. It may have been coincident with the date of plaintiff's discharge from the hospital, but not necessarily so. *Then too, it should have been a question for careful consideration, as to whether the statute should properly have been regarded as running against plaintiff, until such time as he could reasonably be charged with knowledge of the fact that the tube had been overlooked and left in the wound. On the other hand, it may be that the evidence would have clearly shown that under any aspect from which the case may fairly be regarded, the plaintiff was in full possession of all the facts in ample time to have brought his action before the statute of limitations had run against his claim, had he been disposed to do so.* All that we now decide is that the court below should have admitted the evidence offered by plaintiff, giving to it full and fair effect, and should have allowed him to make out his case as completely as he could, before determining whether the action was barred by the statute of limitations, or whether there was anything in the case which could properly be regarded as having the effect of tolling the running of the statute, to an extent sufficient to save this action.
250 Pa. at 566–67, 95 A. at 711 (emphasis added).

the defendant had performed an operation on the plaintiff in 1948 but had failed to remove one of the surgical sponges. Although the plaintiff suffered pain for several years following the operation, he did not discover that the sponge had not been removed until 1957. The plaintiff brought suit soon after his discovery. However, the lower court ruled that the two year statute of limitations contained in the Act of 1895 had run. The Supreme Court reversed, holding that the discovery rule applied. In so holding the Court discussed *Lewey* and the problem of an injury difficult to discover, and stated:

> Did the laws of nature prevent Ayres [sic] from ascertaining what was causing the pain in his abdomen? Certainly he could not open his abdomen like a door and look in; certainly he would need to have medical advice and counsel; certainly he would have to be dependent upon those who with appropriate instruments and devices could pierce the wall of flesh which hid from his own eyes the cause of his wretchedness.

*Id.*, 397 Pa. at 289, 154 A.2d at 792.

The Court did not only rely on the fact that the injury was difficult to discover, however, but further discussed the specific language of the Act of 1895, concluding:

> Both the defendant and the lower court have apparently misevaluated the specific wording of the Act of June 24, 1895. It seems they regard the crucial words as reading: "Every suit . . . must be brought within two years from the time *the act was committed.*" The statute, however, says that the suit must be "brought within two years from the time *when the injury was done.*" The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable.

> The defendant argues in his brief that the true test as to when the statute of limitations begins to run is "when plaintiff could first have maintained his action to a successful result, regardless of the time when the actual damage results." With this statement the defendant practically concedes that the plaintiff must wait until he is

made aware of his condition and what caused it, because otherwise how can he pursue an "action to a successful result?" It must be borne in mind that this is not a case where the act of negligence was known to the plaintiff but the extent of the damages which ensued therefrom was not ascertained until after the expiration of the statute of limitations. On the contrary, this is a case where the plaintiff did not know of the act (which eventuated in injury to him) at the time *that* act occurred.

*Id.*, 397 Pa. at 289–90, 154 A.2d at 792 (original emphasis).

Thus, in applying the discovery rule to a malpractice case the Court relied not only on the judicially created rule of *Lewey* but also on the specific language of the Act of 1895. The discovery rule thus took on the aspect of a rule of statutory interpretation. It nevertheless remained a rule judicially created to respond to the problem presented by an injury that not even a diligent party may reasonably be expected to discover.

Since the Supreme Court's decision in *Ayers* this court has applied the discovery rule in a variety of malpractice cases. *See Acker v. Palena*, 260 Pa.Super. 214, 393 A.2d 1230 (1978); *Grubb v. Albert Einstein Medical Center*, 255 Pa.Super. 381, 387 A.2d 480 (1978); *Barshady v. Schlosser*, 226 Pa.Super. 260, 313 A.2d 296 (1973). The rule has also been applied in many other jurisdictions under various statutes of limitation to actions involving malpractice by various professionals and injuries resulting from complications incident to medical procedures and the ingestion of drugs. *See, e. g., United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100 (9th Cir. 1979); *Bayless v. Philadelphia National League Club*, 579 F.2d 37 (3d Cir. 1978); *Roman v. A. H. Robins Co., Inc.*, 518 F.2d 970 (5th Cir. 1975); *Greenberg v. McCabe*, 453 F.Supp. 765 (E.D.Pa.1978), *aff'd*, 594 F.2d 854 (3d Cir. 1979); *Thrift v. Tenneco Chem., Inc.*, 381 F.Supp. 543 (N.D.Texas 1974); *Prince v. Trustees of the University of Pennsylvania*, 282 F.Supp. 832 (E.D.Pa.1968); *G. D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 122 Cal.Rptr. 218 (1975); *Ray-*

mond v. Eli Lilly & Co., 117 N.H. 164, 371 A.2d 170 (1977); Gilbert v. Jones, 523 S.W.2d 211 (Tenn.App.1974); Gaddis v. Smith, 417 S.W.2d 577 (Texas 1967); Morgan v. Grace Hospital, Inc., supra. And see Restatement (Second) of Torts § 899, comment e (describes wave of recent decisions). This court has also applied the discovery rule to cases other than those involving underground injuries or malpractice and involving statutes other than the Act of 1895. See, e. g., Aberman v. Funk, 278 Pa.Super. 385, 420 A.2d 594 (1980) (Act of 1713, leaking roof). And see Armacoast v. Winters, 258 Pa.Super. 424, 392 A.2d 866 (1978).

Another type of case in which the discovery rule has been applied is a case in which the plaintiff has contracted a disease from a continuous exposure to a hazardous substance. These cases have been called "creeping disease" cases, for it is difficult to determine at what point the exposure caused the disease, and after the disease has been contracted, to discover its cause. The present cases, in which it is alleged that appellees' decedents contracted cancer as the result of being exposed to emissions from coke ovens, are creeping disease cases.

A few jurisdictions have held that in a creeping disease case the statute starts to run with the plaintiff's "first breath" of the hazardous substance, even though he does not discover his disease or its cause until many years later. See Schmidt v. Merchant's Dispatch Trans. Co., 270 N.Y. 287, 200 N.E. 824 (1936); Cartledge v. Jopling, [1962] 1 Q.B. 189 (C.A.), aff'd, [1963] Appeal Cases 758 (H.L.). The first breath rule, however, has led to such harsh results that it has been widely repudiated. See Birnbaum, First Breath's Last Gasp: The Discovery Rule in Products Liability Cases, 13 Forum 279 (1977) (criticizing Schmidt); Kelley, The Discovery Rule for Personal Injury Statutes of Limitations: Reflections on the British Experience, 24 Wayne L.Rev. 1641 (1978) (British reaction to first breath rule announced in Cartledge). Other jurisdictions have viewed subjecting the plaintiff to exposure as a continuing tort and have adopted what may be called the "last breath" rule, under which the

statute of limitations starts to run at the last exposure, but neither has this rule proved satisfactory. *See Garrett v. Raytheon Co.,* Ala., 368 So.2d 516 (1979) (statute of limitation barred suit for injuries from exposure to radiation where last exposure occurred in 1957, even though symptoms were not manifest until 1975). *And see* Note, 31 Ala.L.Rev. 509 (1980) (criticizing *Garrett*). Accordingly, a majority of the jurisdictions that have considered the issue, including the Supreme Court of the United States, have held that the discovery rule applies to creeping disease cases. *See Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155 (8th Cir. 1975); *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir. 1973); *R. J. Reynolds Tobacco Co. v. Hudson,* 314 F.2d 776 (5th Cir. 1963); *Brush Beryllium Co. v. Meckley,* 284 F.2d 797 (6th Cir. 1960); *Ricciuti v. Voltarc Tubes, Inc.,* 277 F.2d 809 (2d Cir. 1960); *Strickland v. Johns-Manville International Corp.,* 461 F.Supp. 215 (S.D.Texas 1978); *Velasquez v. Fibreboard Paper Products Corp.,* 97 Cal.App.3d 881, 159 Cal.Rptr. 113 (App.1979); *Nolan v. Johns-Manville Asbestos & Magnesium,* 74 Ill.App.3d 778, 30 Ill.Dec. 307, 392 N.E.2d 1352 (1979); *Miller v. Beech Aircraft Corp.,* 204 Kan. 184, 460 P.2d 535 (1969); *Louisville Trust Co. v. Johns-Manville Products Corp.,* 580 S.W.2d 497 (Ky.1979). *Harig v. Johns-Manville Products Corp.,* 284 Md. 70, 394 A.2d 299 (1978); *Schiele v. Hobart Corp.,* 284 Or. 483, 587 P.2d 1010 (1978). *And see* Birnbaum, *The Statute of Limitations in Environmental Suits: The Discovery Rule Approach,* Trial Volume 16, No. 4, at 34 (April 1980); Comment, *Asbestos Litigation: The Dust Has Yet To Settle,* 7 Fordham Urban L.J. 55, 77–83 (1980).

Although our Supreme Court indicated in *Plazak v. Allegheny Steel Co.,* 324 Pa. 422, 188 A. 130 (1936), that it might adopt a continuing tort, or "last breath," rule, later, in *Ciabattoni v. Birdsboro Steel Foundry & Machine Co.,* 386 Pa. 179, 125 A.2d 365 (1956), the Court applied the discovery rule to a silicosis case brought under the Occupational Disease Act of 1939. We are therefore satisfied that if the

question were presented to the Supreme Court today, it would apply the discovery rule to a creeping disease case. We are especially certain of this opinion given the fact that the discovery rule is a rule judicially created for the protection of the diligent party; in creeping disease cases the injury and its cause may often be at least as difficult to discover as they were in *Lewey* and *Ayers.* As the Federal District Court, interpreting Pennsylvania law, stated in *Daniels v. Beryllium Corp.,* 227 F.Supp. 591, 595 (E.D.Pa.1964):

> For if the running of the statute of limitations is to be tolled when one cannot know what has happened underground or in one's abdomen . . . there is no good reason to apply the statute when one cannot know or observe what occurs above ground or in the open because the activity involves invisible microscopic particles whose harmful properties are unknown at the time.

*And see Mitchell v. American Tobacco Co.,* 183 F.Supp. 406 (M.D.Pa.1960); *Volpe v. Johns-Manville Corp.,* No. 2052 Philadelphia Court of Common Pleas, January Term 1977, slip opinion, filed May 2, 1980.

From this review, we believe two rather obvious conclusions may be drawn. First, while some of the early cases involved concealment of the injury by the defendant, *e. g.,* the neighbor in *Lewey* hid his removal of the coal, as the rule has developed it has become clear that its basis is not concealment by the defendant but rather the ability of the plaintiff to discover his injury or its cause. *See Daniels v. Beryllium Corp., supra*; Developments, *The Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1200 (1950) (unknowable injuries). Second, while the Supreme Court in *Ayers* applied the discovery rule with specific reference to the word "injury" as used in the Act of 1895, the rule is not derived from, and does not depend upon, the language of a particular statute but instead is a judicially created rule generally applicable to all statutes of limitation and to all cases where the injury or its cause is not immediately evident. Thus in *Lewey* the Court devised and formulated the rule without reference to the specific statute of limitations, and the rule

has since been applied to various statutes of limitations different from the Act of 1895. *See, e. g., Ciabattoni v. Birdsboro Steel Foundry & Machine Co., supra* (statute used phrase "after disability begins"); *Aberman v. Funk, supra* (statute used phrase "after the cause of such actions"); *Irrera v. Southeastern Pennsylvania Transportation Authority*, 231 Pa.Super. 508, 331 A.2d 705 (1974) (statute used phrase "from the date . . . the cause of action accrued"). *And see Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267 (1963) (discussed *infra*). *See also* Comment, *Accrual of Statutes of Limitations: California's Discovery Exceptions Swallow the Rule*, 68 Cal.L.Rev. 106 (1980).

■ One further comment may be added, by way of a fuller statement of the discovery rule. There has been some dispute, or confusion, as to the exact level of knowledge a plaintiff must have before the statute of limitation will start to run. Judge Harry TAKIFF of the Court of Common Pleas of Philadelphia has recently set forth an excellent statement of the rule, as follows:

*Ayers'* progeny have struggled primarily with the question of the reasonableness of plaintiff's conduct in attaining the appropriate level of cognitive knowledge which ultimately prompts a timely lawsuit. With the question of "reasonableness" as a constant qualification running through the decisional law, the principle emerges that three independent phases of knowledge must be known or knowable to plaintiff before the limitations period commences: (1) knowledge of the *injury*; (2) knowledge of the *operative* cause of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct. In the typical personal injury case, knowledge of the foregoing elements is gained contemporaneously with the occurrence of the liability creating events and little difficulty is presented in applying the commencement of the statute of limitations period. When time and space intervene between the several levels of knowledge, however, courts have struggled with the application of the articulated legal standard to the facts in-

volved. An analysis of the case law compels the conclusion that when a plaintiff knows or has reason to know of his injury, its operative cause, and the causative relationship to independent occurrences, he possesses as a matter of law, the necessary information to herald a possible tort and hence commence the running of the statutory period. *Volpe v. Johns-Manville Corp., supra*, slip opinion at 4–5. (original emphasis)

We have nothing to add to Judge TAKIFF's statement of the rule, except to note that the judge refused to adopt the view that a plaintiff must also have knowledge that he has a cause of action. Although there is some support for the view that such knowledge is necessary, *see Exnicious v. United States*, 563 F.2d 418 (10th Cir. 1977); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976), the better view is that it is not. *See United States v. Kubrick, supra* (Supreme Court of United States rejects view).

### 2

We may now turn to appellants' arguments concerning the application of the discovery rule to the present actions. Since the survival actions involve one statute of limitation, and the wrongful death actions another, and since different arguments are offered concerning each statute of limitation, we shall discuss the actions separately.

### a

The statute of limitation applicable to the survival actions is the Act of 1895, 12 P.S. § 34. *See Piacquadio v. Beaver Valley Service Co.*, 355 Pa. 183, 49 A.2d 406 (1946); *Stegner v. Fenton*, 351 Pa. 292, 40 A.2d 473 (1945). This statute provides:

Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law.

12 P.S. § 34.

The Act of 1895 was the statute of limitation construed by the Supreme Court in *Ayers.* It is therefore clear—and appellants do not argue otherwise—that the discovery rule applies to survival actions.

■ Appellants' major argument is based on the fact that in applying the discovery rule in *Ayers,* the Supreme Court focused on the word "injury" in the Act of 1895. From this they argue that the statute of limitation must have began to run by the time the decedents died, for it would be absurd to hold that the decedents could have suffered an "injury" after death, and we should not interpret a statute to create an absurd result. 1 Pa.C.S. § 1922(1); *Westinghouse Broadcasting Co., Inc. v. Commonwealth Bd. of Finance and Revenue,* 14 Pa.Cmwlth. 59, 321 A.2d 413 (1974).

Initially, it may be noted that while it is true that the Court in *Ayers* focused on the word "injury" in the Act of 1895, as construed by the Court, injury was not limited to physical harm. Instead the Court construed injury to mean that no injury occurred until the plaintiff was "made aware of his condition and what caused it." 397 Pa. at 290, 154 A.2d at 792. Thus, in the Court's mind the concept of injury included an awareness not only of physical harm but also of the cause of the harm. *And see Volpe v. Johns-Manville Corp., supra.* Accordingly, even though here it may be said that in the sense of awareness of physical harm the injuries must have manifested themselves at least by the times of the decedents' deaths, in the sense of awareness of the operative cause of the harm and of the causative relationship between the harm—cancer—and the conduct—emissions from the coke ovens—the injuries could have manifested themselves long after the decedents' deaths, when the decedents' representatives discovered the cause of their deaths. It is therefore not at all absurd to say, on the basis of *Ayers,* that the decedents' injuries occurred after their deaths.

More fundamentally, however, appellants' emphasis on the word "injury" is clearly misplaced. While it is true that the

Court in *Ayers* focused upon the word injury in the Act of 1895, the discovery rule, as we have discussed, is not derived from, and does not depend upon, the language of a particular statute but instead is a judicially created rule generally applicable to all statutes of limitation and to all cases where the injury or its cause is not immediately evident. *See Lewey v. Fricke Coke Co., supra; Ciabattoni v. Birdsboro Steel Foundry & Machine Co., supra; Aberman v. Funk, supra; Irrera v. Southeastern Pennsylvania Transportation Authority, supra.*

Appellants' second argument is that the discovery rule is concerned only with the knowledge of the injured party and, therefore, if the injured party has not discovered his injury or its cause before his death, the statute nevertheless begins to run at the time of death, for the ignorance of the decedent's representative is immaterial. Appellants cite no case directly in support of this argument but instead rely only on the following statement made by the Federal District Court in *Carney v. Barnett*, 278 F.Supp. 572 (E.D.Pa. 1967):

> Since a Survival Action is not a new cause of action but merely a continuation of the cause of action which accrued to the deceased, [citation omitted], it is the decedent's knowledge that we must consider in determining when the statute commences to run and not that of his personal representative. For the statute does not start to run anew upon the passing of decedent's claim to his personal representative.

*Id.* at 575.

This statement is taken out of context. Moreover, neither the statement nor the ultimate decision in *Carney* supports appellants. The key word in the statement is that the statute does not start to run "anew." Thus, if the decedent discovered or should have discovered his injury and its cause, the statute began to run from that time; it does not begin to run *anew* merely because the decedent's representative is

ignorant. This is all that *Carney* stands for, for in that case the decedent knew his injury and its cause before he died.[5]

■ We therefore conclude that where, as alleged in the present cases, the decedent did not know and reasonably should not have known of the cause of his injury before his death, the Act of 1895 did not start to run during the decedent's lifetime and did not start to run until his representative became aware or should have become aware of the cause.

b

■ The statute of limitation applicable to the wrongful death actions is the Act of 1855, 12 P.S. § 1603. This statute provides:

> The declaration shall state who are the parties entitled in such action; the action shall be brought within one year after the death, and not thereafter.

12 P.S. § 1603.

Appellants argue that the discovery rule cannot delay the date when the Act of 1855 starts to run because the Act uses the word "death" and not some less definite word or expression, such as "injury" or "cause of action." In support of their argument appellants rely on the decision of the Commonwealth Court in *Workmen's Compensation Appeal Bd. v. Chobanian*, 19 Pa.Cmwlth. 632, 339 A.2d 126 (1975), which held that the discovery rule did not apply to that part of section 315 of the Occupational Disease Act of 1939 that provided:

> In cases of death all claims for compensation shall be forever barred ... unless, within sixteen months after the death, one of the parties shall have filed a petition as provided in article four hereof.

In reaching its decision in *Chobanian* the Commonwealth Court distinguished the Supreme Court's decision in *Ciabattoni* as follows:

**5.** In *Carney* the decedent had worked with thallium, knew its danger when ingested, knew that his illness was caused by ingesting thallium, and knew where the thallium had come from.

The second basis on which appellant-claimant would avoid the sixteen months from death limitation is that the sixteen months does not begin to run at the time of death, but rather from the time appellant-claimant knew that the death was the result of an occupational disease and that this did not occur until July of 1973. This argument is based on the decision in *Ciabattoni v. Birdsboro Steel Foundry & Machine Company*, 386 Pa. 179, 125 A.2d 365 (1956). Appellant-claimant's reliance on that case is totally misplaced. That case stands only for the proposition that the statute of limitations for a claim of total disability due to an occupational disease begins to run from the time the existence of the disease is completely established by medical diagnosis to the knowledge of the claimant. In the case of a claim for death, the statute as quoted above is quite specific that the sixteen months run from the date of death.

19 Pa.Cmwlth. at 634–35, 339 A.2d at 127.

To this we may add that in *Cadieux v. International Telephone & Telegraph Corp.*, 593 F.2d 142 (1st Cir. 1979), the Court of Appeals for the First Circuit, interpreting Rhode Island law, held that the discovery rule did not apply to the Rhode Island wrongful death statute of limitations, stating:

... the cases extending the discovery rule to the cause, as opposed to the fact, of injury involved negligence statutes of limitation requiring suit within a certain time after the cause of action "accrued" [citations omitted]. The word "accrued" leaves room for judicial interpretation and even innovation as to when the last element of a common law cause of action comes into being. The directive that suit must be brought within two years of death leaves no such room.

593 F.2d at 144.

While we admit that appellants' argument has some force, and while we have no desire to create even an apparent conflict between a decision of this court and a decision of the Commonwealth Court, nevertheless we must reject appellants' argument.

First, the argument ignores the fact that the discovery rule is not derived from, and does not depend upon, the language of a particular statute but is instead a judicially created rule generally applicable to all statutes of limitation and to all cases where the injury or its cause is not immediately evident. This is not to say that the legislature *could* not draft a statute of limitation or a statute of repose that would specifically exclude application of the discovery rule. However, we are not persuaded that by using the word "death" instead of the word "injury", or some other word or expression such as "accrued" or "cause of action," the legislature *did* exclude application of the discovery rule. Since the injury in a wrongful death action *is* the death, it was only natural, and one would expect, that the legislature should use "death" as the point at which the Act of 1855 starts to run, just as it has used the word "injury" as the point at which the Act of 1895 starts to run. Given that "death" was the natural word for the legislature to choose, we see no basis for reading into that choice an intent to exclude application of the discovery rule. The discovery rule was not even announced until 1895, with the decision in *Lewey*. To suppose that by its choice of the word "death" in 1855 the legislature intended to exclude application of the rule is unwarranted.

Second, although no party has cited it, we believe that the Supreme Court's opinion in *Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267 (1963), recognizes that the discovery rule may apply to a wrongful death action. In *Schaffer* the decedent died on December 24, 1958, because she had been carelessly prematurely discharged from the hospital. A wrongful death action was not brought until October 13, 1960. When the defendants moved to dismiss the action, citing the Act of 1855, the plaintiff responded that he did not know of the defendants' negligence until December 29, 1959. However, on depositions the plaintiff and the decedent's father both admitted that they had not been diligent, for they had made no effort to discover the facts surrounding the death until December 29, 1959. Moreover, the cause

of death was not difficult to discover, unless it was concealed. The plaintiff then moved to amend his pleading to allege that the defendants had concealed the cause of death. The lower court refused to permit the amendment and entered judgment for the defendants. Reversing, with instructions to allow the amendment, the Supreme Court stated:

> The pivotal question now is, whether or not the court below erred in refusing the plaintiff the right to amend the reply? If this refusal were correct, the entry of judgment was also correct and necessarily followed, for without the added factual allegations set forth in the amendment, plaintiff's cause of action was barred by the Statue of Limitations.
>
> Under the law of Pennsylvania, it is the duty of one asserting a cause of action against another to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute the suit within the prescribed statutory period: *Patton v. Commonwealth Trust Co.*, 276 Pa. 95, 119 A. 834 (1923); *Turtzo v. Boyer*, 370 Pa. 526, 88 A.2d 884 (1952). Mere mistake, misunderstanding or lack of knowledge is not sufficient to toll the running of the statute: *Ridgway's Account*, 206 Pa. 587, 56 A. 25 (1903); *McEnery v. Metropolitan Life Ins. Co.*, 50 Pa.D. & C. 395 (1944). If, however, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the limitation of the action: *Plazak v. Allegheny Steel Company*, 324 Pa. 422, 188 A. 130 (1936) and *Deemer & Weaver*, 324 Pa. 85, 187 A. 215 (1936). Likewise, if the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitation does not begin to run until discovery of the injury is reasonably possible. See, *Gotshall v. Langdon & Co.*, 16 Pa.Super. 158 (1901); *Lewey v. Fricke Coke Co.*, 166 Pa. 536, 31 A. 261 (1895); *Ayers v.*

*Morgan,* 397 Pa. 282, 154 A.2d 788 (1959); *Smith v. Bell Telephone Co. of Pa.,* 397 Pa. 134, 153 A.2d 477 (1959). 410 Pa. at 405–06, 189 A.2d at 269–270.

We think it clear that since the plaintiff in *Schaffer* had admitted that he had not been diligent, the discovery rule did not prevent the running of the statute of limitation—the Act of 1855—and therefore the case had to be decided on the basis of whether the defendants had concealed the cause of the death. We think it equally clear that the Supreme Court recognized that the discovery rule is a rule of general application that does prevent the running of the Act of 1855 so long as the plaintiff is diligent. Otherwise the Supreme Court would not have stated the discovery rule and cited *Lewey, Ayers,* and *Smith.*

Finally, we see no reason for holding that although the discovery rule applies to the Act of 1895, it does not apply to the Act of 1855. It seems only sensible that a survival action should start at the same time as a wrongful death action. We recognize that the actions are distinct. Nevertheless, they are often companion actions and are subject to consolidation under our procedural rules. *See* Pa.R.Civ.P. 213(e). Furthermore, we note that effective June 27, 1978, the two actions are both controlled by the same two year statute of limitation, set forth in the Act of July 9, 1976.[6] To be sure, the present cases are controlled by the Act of 1855 and the Act of 1895 and not by the Act of July 9, 1976. However, enactment of the Act of July 9, 1976, is a recognition of the fact that a survival action and a wrongful death action are often companion actions, and thus is consistent with our conclusion that so far as the applicability of the discovery rule is concerned, no reason exists for distinguish-

**6.** This statute provides:
§ 5524. Two year limitation
The following actions and proceedings must be commenced within two years

      *     *     *     *     *     *

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.
42 Pa.C.S.A. § 5524(2).

ing between them. *See Newcomer v. Searle & Co.*, 378 F.Supp. 1154 (E.D.Pa.1974) (Act of 1855 should be interpreted in conformity with the Act of 1895).

c

Appellants also offer an argument based not on their interpretation of the Act of 1895 ("injury") or the Act of 1855 ("death") but on considerations of general policy. They suggest that to apply the discovery rule to the present actions would defeat the policy of repose expressed by both the Act of 1895 and the Act of 1855 by enabling a claim to be brought many years after death if medical science for the first time discovers a causal connection between the cause of death and a defendant's product or activity.

We recognize the fact that application of the discovery rule in the present case raises the spectre of suits on behalf of persons long dead. This recognition, however, does not cause us to retreat from our decision that the discovery rule applies. The application of the discovery rule has always created the possibility of old claims being prosecuted. Our holding here does not defeat the policy expressed in statutes of limitation any more than that policy has always been defeated by application of the discovery rule.

The premise of appellant's argument is that there is a single policy—repose—expressed by statutes of limitation such as the Act of 1895 and the Act of 1855. This premise is mistaken; in fact, repose is only one of several, not always harmonious, policies expressed by such statutes.

One policy expressed by statutes of limitation is set forth in the phrase "vigilantibus non dormientibus subvenient legis," *Forster v. Cumberland Valley R. Co.*, 23 Pa. 371 (1854), which may be freely, and at the same time woodenly, translated as the "law lends its aid only to those who exercise diligence in invoking it." *Thorne's Estate*, 344 Pa. 503, 515, 25 A.2d 811, 817 (1942). Thus, statutes of limitation have been described as "expressive of the feeling of mankind that where there are wrongs to be redressed, they should be redressed without unreasonable delay, and where there are rights to be enforced, they should be enforced

without unreasonable delay," *Ulakovic v. Metropolitan Life Ins. Co.,* 339 Pa. 571, 575–76, 16 A.2d 41, 43 (1940); the "genius and purpose" of such statutes have been described as "stimulat[ing] men to diligence in business—to promptness in looking after their rights—to litigation, if it must be had, whilst evidence is living and fresh, and at hand," *Fleming v. Culbert, supra* at 500.

A second policy expressed by statutes of limitation is that even though someone may have been a wrongdoer, after a certain period of time he should have repose and be spared the inconvenience and prejudice that may result from attempting to defend himself against a stale claim. *See Insurance Co. of North America v. Carnahan,* 446 Pa. 48, 284 A.2d 728 (1971); *Philadelphia B. & W. R. Co. v. Quaker City Flour Mills Co.,* 282 Pa. 362, 127 A. 845 (1925). This policy of repose may be regarded as especially for the protection of the particular defendant, but it also has a public dimension; thus it has been said that it is "a great public evil that estates should be forever in jeopardy and that no end should be put to stale controversies." *Kenyon v. Stewart,* 44 Pa. 179, 191 (1863).

A third policy expressed by statutes of limitation, one more concerned perhaps with society in general than with the particular defendant, is a policy of administrative convenience and efficiency; it is awkward and wasteful for judicial resources to be used to decide stale claims on stale evidence. *See* Developments, *supra; Morgan v. Grace Hospital, Inc. supra.*

In *Morgan,* the West Virginia court described the policies expressed by statutes of limitation very much as we have:

> The basic purpose of statutes of limitations is to encourage promptness in instituting actions; to suppress stale demands or fraudulent claims; and to avoid inconvenience which may result from delay in asserting rights or claims when it is practicable to assert them.

149 W.Va. at 791, 144 S.E.2d at 161.

In most cases in which an action is held barred by a statute of limitation, all the policies expressed by the statute

are promoted; there is no tension between any of the policies and the decision to bar the action. This is so because the plaintiff's failure to bring his action earlier is his own fault, for he has slept on his rights, and the court will not permit the right of a party who has slept on his rights to overcome the defendant's right to repose and society's interest in the convenient and efficient use of its judicial resources. By strictly enforcing the statute of limitations the court both encourages promptness in other claimants and preserves repose and a proper use of its resources.

■ In some cases, however, the delay in bringing the action is not in any way the fault of the injured party. This is so in cases where the discovery rule has been applied, for a "person cannot be said to have been 'sleeping on his rights' when he does not know and reasonably could not have known that he had such rights." *Raymond v. Eli Lilly & Co., supra* at 170, 371 A.2d at 174, *quoting Wyler v. Tripi,* 25 Ohio St.2d 164, 178, 267 N.E.2d 419, 427 (1971); *Gaston v. Hartzell,* 89 N.M. 217, 549 P.2d 632 (N.M.App.1976). In such cases application of the statute of limitation to bar the action would no doubt promote repose, and might also promote administrative convenience and efficiency, but it would not promote diligence or, conversely, penalize the lack of diligence, for the plaintiff would be penalized despite the fact and even though the exercise of diligence would not have led him to bring the action sooner. The policy question thus presented in the discovery cases has been: If a plaintiff cannot discover his injury or its cause, even when exercising diligence, should the law nevertheless bar his action in the interest of preserving repose and administrative convenience and efficiency? The answer uniformly given by the courts of this state and other jurisdictions has been that the law should not bar the action. The "policy of repose is outweighed where the interests of justice require vindication of the plaintiff's rights," *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965); *Nolan v. Johns-Manville Asbestos & Magnesium, supra; Harig v. Johns-Manville Products Corp., supra.*

Accordingly, appellant's argument that our application of the discovery rule to the present cases would defeat the policy of repose expressed in the statutes of limitation is an argument that may be made, and probably has been made, in every case where the discovery rule has been applied. In *Lewey* it could have been argued that another landowner might discover that his coal had been removed many years ago, yet that possibility did not cause the Supreme Court to refuse to create and then apply the discovery rule. In all the discovery rule cases, the consistent result has been that the right of the blamelessly ignorant injured party to bring his action is given greater weight than the wrongdoer's right to repose, or society's interest in administrative convenience and efficiency. Thus, despite the fact that our decision here raises a spectre of suits on behalf of persons long dead, we nevertheless shall adhere to our past cases, and those of the Supreme Court, and apply the discovery rule.

It does not follow from what we have said that appellants are without remedy—only that the remedy is not a judicial one. It is within the competence of the legislature to enact a statute having as its dominant purpose the enforcement of the policy of repose. The legislature has enacted such a statute in the past, *see* Act of Dec. 22, 1965, P.L. 1183, § 1, 12 P.S. § 65.1 (Purdon's Supp.1977), substantially re-enacted by the Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978, as amended, Act of April 28, 1978, P.L. 202, No. 53, § 10 (63.1), eff. June 27, 1978, and the statute has been upheld. *See Freezer Storage v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978). A statute of repose actually sets out a much longer period than is set out in a statute of limitation, as, for example, twelve years from the date of the completion of an improvement to real property, 42 Pa.C.S.A. § 5536, and it strikes a very different balance than is struck by a statute of limitation. Where a statute of limitation controls the time within which a cause of action must be brought, a statute of repose "completely eliminates" the cause of action. *Misitis v. Steel City Piping Co.*, 441 Pa. 339, 343, 272 A.2d 883, 885 (1971). Thus, if the injury occurs

more than twelve years after the date of completion of an improvement to real property, the statute of repose bars the action without regard to whether it was timely filed under the statute of limitation. *Aberman v. Funk, supra.*

However, whether the legislature should decide to enact a statute of repose to protect appellants from the future litigation they fear is of no concern to this court on this appeal. The Act of 1895 and the Act of 1855 are not statutes of repose but statutes of limitation. As such they are subject to the discovery rule.

3

Appellants' final argument is that even if the discovery rule does apply to the present cases, as we have held it does, still the lower court should have granted their motions for summary judgment because the record demonstrates that if appellees had exercised reasonable diligence, they would have discovered the causal connection between coke oven emissions and lung cancer more than two years before the present actions were brought. In support of this argument appellants cite an unpublished opinion of the Pennsylvania Workmen's Compensation Board in *Williamson v. United States Steel Corp.*, Docket No. A–65035 (filed June 15, 1972), which they say recognized that lung cancer is an occupational disease suffered by those who work near coke ovens.[7] According to appellants, reasonably diligent appellees would have engaged an attorney in 1972 or 1973, and the attorney

---

**7.** Appellants quote the finding of the Board as follows:

Claimant is suffering from complications of cancer of the lung, resulting from his exposure to the atmosphere on top of batteries in the coke industry for six or seven years out of the twenty-six years that claimant worked for defendant. We hereby define the occupational disease as: complications of lung cancer from exposure to the atmosphere on top of batteries in the coke industry. This disease, then, by definition, is not common to the general public. It requires more than five years to develop and in this case developed to the point of disablement after an exposure of more than five years. It is, therefore, an occupational disease under Section 108(n) of the Pennsylvania Occupational Disease Act. Claimant's medical evidence defines his exposure and we find that claimant's occupational disease resulted from his employment with defendant.

Brief of Bethlehem Steel Corp. at 32 n. 17.

would have been aware of the Workmen's Compensation Board's opinion in *Williamson* and therefore would have brought the actions sooner. In opposing the motions for summary judgment, appellees argued that they could not reasonably have been expected to have discovered the causal connection between coke oven emissions and lung cancer before October 1976, when the Secretary of Labor, pursuant to the Occupational Safety and Health Act, promulgated standards for employees exposed to such emissions.

■ Under Pa.R.Civ.P. 1035, summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In determining whether to enter summary judgment, the court must view the evidence in the light most favorable to the non-moving party, *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 280 A.2d 570 (1971), and enter the judgment only if the case is clear and free from doubt, *Prince v. Pavoni*, 225 Pa.Super. 286, 302 A.2d 452 (1973).

■ In the present cases the lower court ruled that summary judgment for appellants was inappropriate because there was a genuine issue as to when appellees reasonably should have discovered the causal connection between the coke oven emissions and the decedents' lung cancer. We agree. In many cases, perhaps in most, the issue of what a plaintiff reasonably should have discovered is not a question that may be resolved as a matter of law at the summary judgment stage but instead is a question for the jury. *See Smith v. Bell Telephone Co., supra; Armacoast v. Winters, supra; Bayless v. Philadelphia National League Club, supra.* Sometimes a case will arise where the facts will be undisputed and will lead unerringly to the conclusion that the length of time it took the plaintiff to discover the injury or its cause was unreasonable as a matter of law. *See Aberman v. Funk, supra.* In such a case summary judgment may be appropriate. *See Irrera v. Southeastern Pennsylvania*

*Transportation Authority, supra. And see Aberman v. Funk, supra.* The present cases, however, are not such cases. The existence of the unpublished opinion in *Williamson* is not a fact that leads unerringly to the conclusion that the length of time it took appellees to discover the cause of the decedents' cancer was unreasonable as a matter of law.

Affirmed.